722 P.2d 291

**STATE of Arizona, Appellee,**

v.

**Steven Gregory WARNER, Appellant.**

**No. 6540.**

Supreme Court of Arizona,
En Banc.

July 18, 1986.

**124**

Robert K. Corbin, Atty. Gen., William Schafer, III, Chief Counsel, Criminal Div., Greg A. McCarthy, Asst. Atty. Gen., Phoenix, for appellee.

Gordon J. O'Brien, Lake Havasu City, for appellant.

GORDON, Vice Chief Justice.

Defendant, Steven Gregory Warner, was tried by a jury and convicted of four felony counts: first degree murder, aggravated robbery and two counts of theft. The trial court sentenced defendant to a term of life imprisonment for the murder conviction; 10 years for aggravated robbery; 1.87 years for theft and 10 years for theft, all sentences to be served concurrently. Defendant has appealed. We have jurisdiction pursuant to Arizona Const. art. 6 § 5(3) and A.R.S. §§ 13–4031 and –4033.

Defendant and Robert Merwin were from the Los Angeles area and immediately prior to the incident in question lived together in a van or disabled car. In September of 1984 the pair decided to travel to Parker, Arizona. A friend drove them a portion of the distance and they hitchhiked the remainder of the way. Upon arrival in Parker they began looking for Fred Whitlinger, the victim and town resident. Merwin had previously met Whitlinger on a trip to Parker. Defendant and Merwin went to the victim's house and once the victim recognized Merwin he agreed to allow the two to stay there for a short period of time.

The first night in Parker the three men spent the majority of the evening drinking beer at the victim's house. The next day defendant and Merwin roamed the Parker area. The two had arrived in Parker with very little money, which they managed to lose while swimming that day in the Colorado River. The next morning the two again ventured out from the victim's house and ultimately found the victim that afternoon in a local bar. The three men went back to the victim's house where they drank beer. Merwin asked the victim for ten dollars which the victim allegedly gave him on the condition that Merwin sleep with him that night.

Defendant and Merwin went to a bar that evening, drank ten dollars' worth of alcohol and took some pills ("downers"). They then walked back to the victim's house. The victim was inside and the three men again began to consume beer. The scene leading up to the crime is not totally clear, but shortly thereafter defendant killed the victim by hitting him over the head with a brick. There are conflicting versions of the killing.

Merwin testified that during the evening he left the room and took a shower. When he returned he claims to have seen defendant strike the victim twice on the head with a brick; he next ordered defendant to stop and pushed him back. Defendant allegedly told Merwin that the reason for the attack was that the victim grabbed defendant's testicles.

Defendant testified that Merwin never left the room, but passed out in a chair. Defendant further testified that the victim had put his hand on defendant's leg. Defendant resisted, said he was leaving and began walking toward the door. At that time the victim allegedly grabbed defendant's testicles. Defendant then claims to have doubled over in pain, grabbed a brick and struck the victim. After the first blow, defendant claims to have blacked out. There were several blows to the victim's head.

There is further conflicting evidence regarding suffocation of the victim. Merwin claims that defendant held down a pillow over the victim's face after he struck him with the brick; defendant claims Merwin held the pillow. There is no dispute, however, that one of the two suffocated the victim. Eventually, defendant and Merwin removed two rings from the victim's fingers, and took a number of items including a portable radio, some guns, and cash from the victim's house. The victim's pockets were found turned inside out. The two loaded the items into the victim's pickup truck and drove back to Los Angeles where they abandoned the truck and pawned or sold the majority of the items. Both defendant and Merwin were subsequently arrested in California.

Merwin pled guilty to second degree murder and was required to testify at defendant's trial as a condition of his plea agreement. Merwin and defendant were housed in the same jail facility in Parker while awaiting trial. Approximately 30 days before defendant's trial, jail personnel conducted a "shakedown" search of defendant's cell and seized all the papers located therein. Apparently various jail inmates told authorities that defendant and Merwin had discussed altering their testimony for trial. The search was apparently conducted to secure evidence of this alleged perjury. All of the papers were copied, the originals returned to defendant while copies were given to the County Attorney.

The bulk of the seized documents were letters either written by defendant or Merwin to various people. There were also letters written to defendant that he received in jail. Also seized were transcripts and summaries of jail conferences with defense counsel. Defendant's attorney had a practice of tape-recording his consultations with defendant, having summary transcriptions made and then supplying defendant with a copy. Defendant then made his own personal notes in relation to these conversations and other aspects of the case.

The County Attorney had possession of these documents for approximately 30 days before notification was given to defense

counsel who found out on Saturday. The trial began on Tuesday. On the first day of trial, before a jury was picked, defendant moved for dismissal based on the state's violation of the attorney-client privilege and an illegal search of defendant's cell. The trial court refused to hear argument at that time and requested defense counsel to submit authority for his moving position. After the jury was selected the prosecutor gave the trial court a sealed file which contained the seized documents.

The next morning the motion to dismiss was orally argued by the parties with neither side presenting written memoranda. Defendant urged that the charges should be dismissed or in the alternative that the state should be precluded from using the material in any way. Defendant claimed the state allegedly called two witnesses based upon the information and later claimed that he was forced to take the stand in his defense due to the seizure.

The prosecutor admitted that his office had possession of the documents for approximately 30 days. He claimed to have given the package to an assistant to read, who later returned it to the prosecutor with the comment that "there may be some interesting things in there and that I should look at them." The prosecutor next claimed to have read a letter to defendant from his mother and then began reading transcripts or a memorandum from the defense attorney's office. He avowed to the trial court that he immediately stopped reading and that he did not obtain any information from the papers. The trial court took the motion under advisement and told defense counsel that he probably would not rule favorably without some additional authority. The trial court agreed to review the contents of the seized documents although the record on appeal is unclear as to whether the documents were in fact reviewed. The trial continued and at the end of defendant's case, the motion to dismiss was again urged without written authority. The trial court denied the motion ("Based on the arguments presented previously and without some further authority, I'm going to deny your request").

Defendant again raised the issue of the seizure of the papers in his motion for new trial, which was denied.

We have reviewed the entire record for error with defendant's only colorable claim being the seizure of his personal documents from his cell. We must determine if the seizure violated either defendant's right to counsel or the attorney-client privilege.

Prisoners are not wholly stripped of constitutional protections while incarcerated. *Wolff v. McDonnell,* 418 U.S. 539, 575–576, 94 S.Ct. 2963, 2984, 41 L.Ed.2d 935 (1974). However, no one can dispute that cell searches represent an appropriate security measure, *id.,* even as to pretrial detainees such as defendant. *United States v. Hearst,* 563 F.2d 1331, 1345 n. 11 (9th Cir.1977). *See* W. LaFave and J. Israel, *Criminal Procedure* § 3.9, p. 335 (1984).

The Supreme Court recently stated that, "[The] fourth amendment ... does not apply to the confines of the prison cell" and that the "[l]oss of freedom of choice and privacy are incidents of confinement." *Hudson v. Palmer,* 468 U.S. 517, 528, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984). In *Palmer,* after a "shakedown" search, a prison guard destroyed a quantity of a prisoner's property, including legal materials and letters. The prisoner filed an action pursuant to 42 U.S.C. § 1983. The Supreme Court affirmed the granting of summary judgment against the prisoner stating that the seizure and destruction of a prisoner's effects did not fall within the protection of the fourth amendment but that if a prisoner was subjected to "calculated harassment unrelated to prison needs" this would violate the eighth amendment.

Assuming the jail officials in the instant case legally seized defendant's papers free of fourth amendment scrutiny, the question becomes, once the papers were seized, what use could be legally made of them, regardless of the fact defendant himself may not have been appreciably denied the use of his file.

■ We first wish to quash an argument by the state that any violation of defendant's rights occurred when the sheriff's office seized defendant's documents, implying that the County Attorney's office would then be free from any blame. Both offices are government entities and the judicial standards governing investigative misconduct are equally applicable to prosecutors and police. *See State v. Tucker*, 133 Ariz. 304, 308, 651 P.2d 359, 363 (1982); B.L. Gershman, *Prosecutorial Misconduct* § 1.2 (1985). If this were not so, prosecutors would be able to persuasively argue, for example, that the exclusionary rule should not apply in cases of police misconduct.

■ The right to counsel is guaranteed to a defendant in a criminal case by both the sixth amendment to the United States Constitution and art. 2, § 24 of the Arizona Constitution. A defendant's right to counsel includes the protection against improper intrusions by the prosecutor or other government agents into the confidential relationship between a defendant and his attorney. Gershman, *supra*, at § 1.6. This right must be carefully guarded by the courts of this state. Both Arizona case law and the Rules of Criminal Procedure state that the right to counsel includes the right to consult in private with an attorney. *State v. Holland*, 147 Ariz. 453, 455, 711 P.2d 592, 594 (1985); Rule 6.1(a), Ariz.R. Crim.P., 17 A.R.S. Effective representation is not possible without the right of a defendant to confer in private with his counsel. *State v. Holland, supra.*

"[A]s a practical matter, if the client knows that damaging information could more readily be obtained from the attorney following disclosure, the client would be reluctant to confide in his lawyer and it would be difficult to obtain fully informed legal advice." *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976). Thus, if an accused is to derive the full benefits of his right to counsel, he must have the assurance of confidentiality and privacy of communication with his attorney. *Barber v. Municipal Court*, 24 Cal.3d 742, 751, 157 Cal.Rptr. 658, 662, 598 P.2d 818, 822 (1979).

■ The right to counsel, which embodies the right to private consultation with counsel, is violated when a state agent is present or interferes at confidential attorney-client conferences. *See State v. Holland, supra; McNutt v. Superior Court*, 133 Ariz. 7, 648 P.2d 122 (1982). We think this principle applies to situations where a private consultation occurs, but is later undermined by state agents.

It is irrelevant to the reasons underlying the guarantee of privacy of communication between client and attorney that the state is intruding for one purpose rather than another. *Barber v. Municipal Court*, 24 Cal.3d at 753, 157 Cal.Rptr. at 664, 598 P.2d at 824. The chilling effect on full and free disclosure by a client would be the same, whatever the state's asserted purpose for intruding. *Id.* Aware of the possibility that a state agent is intruding or will be privy to information the direct subject of the confidential communications will cause a client to be severely constrained in freely discussing his case with his attorney.

■ The right to confer privately with counsel and to obtain effective assistance therefrom was presumptively violated when defendant's personal papers and the work product[1] of defense counsel were turned over to the County Attorney for inspection. In *Wilson v. Superior Court*, 70 Cal.App.3d 751, 139 Cal.Rptr. 61 (1977), police officers surreptitiously tape-recorded

---

1. Portions of the seized papers come within what is termed work product per Rule 15.4(b), Ariz.R.Crim.P., 17 A.R.S., consisting of defense counsel's theories, opinions, recommendations, conclusions, factual analysis and trial strategy. *See United States v. Nobles*, 422 U.S. 225, 238, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975) ("At its core, the work product doctrine shelters the mental processes of the attorney ..."); *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 154, 95 S.Ct. 1504, 1518, 44 L.Ed.2d 29 (1975) ("Whatever the outer boundaries of the attorney's work product doctrine, the rule clearly applies to memoranda which set forth the attorney's theory of the case and his litigation strategy").

a jail conversation between an inmate awaiting trial, and his attorney. The California Court of Appeal found this intrusion to be "an outrageous violation of [the accused's] most fundamental constitutional rights ... [that] poses a potential threat to the rights of each of us." *Id.* 70 Cal. App.3d at 758, 139 Cal.Rptr. at 65. We cannot tolerate impermissible interferences with the right to the assistance of counsel and deplore any governmental action which intrudes on the attorney-client relationship.

■ We now must address the difficult determination of what remedy should be available to the defendant. In making this determination we must balance the conflicting positions of defendant and the state: defendant's right to counsel versus society's strong interest in the administration of criminal justice. Courts which have considered the remedy for governmental interference with a defendant's confidential relationship with his attorney have not required automatic dismissal.[2] The Supreme Court in *Weatherford v. Bursey,* 429 U.S. 545, 97 S.Ct. 837, 842, 51 L.Ed.2d 30 (1977) stated, "... when conversations with counsel have been overheard, the constitutionality of the conviction depends on whether the overheard conversations have produced, directly or indirectly, any of the evidence offered at trial." The Court went on to reject the application of a prejudice per se rule requiring dismissal and stated:

"There being no tainted evidence in this case, no communication of defense strategy to the prosecution, and no purposeful intrusion by Weatherford, there was no violation of the Sixth Amendment insofar as it is applicable to the states by virtue of the Fourteenth Amendment."

429 U.S. at 558, 97 S.Ct. at 845.

The Supreme Court's approach to remedy sixth amendment violations has been to identify and then neutralize the taint by tailoring relief appropriate in the circumstances to assure the defendant the effective assistance of counsel and a fair trial. *United States v. Morrison,* 449 U.S. 361, 365, 101 S.Ct. 665, 668, 66 L.Ed.2d 564 (1981). "Absent [prejudicial] impact on the criminal proceedings, ..., there is no basis for imposing a remedy in [a] proceeding, which can go forward with full recognition of defendant's right to counsel and to a fair trial." *Id.*

■ In light of the fact that no evidentiary hearing was held by the trial court when it was made aware of the state's invasion, we believe the appropriate remedy in this case is to remand for a hearing to determine how, if at all, defendant was prejudiced by the state's intrusion, with the burden on the state to prove defendant was accorded a fair trial. We believe this remedy is appropriate considering the short notice defense counsel was given of the seizure and the potential for such a drastic consequence of dismissal of the charges. In this and all further cases where the state invades the attorney-client relationship and interferes with a defendant's right to counsel the state has the burden to demonstrate that no evidence introduced at trial was tainted by the invasion. The trial court must be convinced beyond a reasonable doubt that defendant will be able to obtain a fair trial. *See Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). Since the burden lies with the state there may be situations where it is not possible for a prosecution to proceed absent proof the invasion was not prejudicial. *See Hoffa v. United States,*

2. *See, e.g., United States v. Melvin,* 650 F.2d 641 (5th Cir.1981); *United States v. Irwin,* 612 F.2d 1182 (9th Cir.1980); *United States v. Jimenez,* 626 F.2d 39 (7th Cir.1980); *United States v. Kember,* 648 F.2d 1354 (D.C.Cir.1980); *United States v. Sander,* 615 F.2d 215 (5th Cir.1980); *United States v. Glover,* 596 F.2d 857 (9th Cir. 1979).

However, some courts do not require a showing of prejudice by the defendant when such a

violation occurs or require automatic dismissal. *See, e.g., Briggs v. Goodwin,* 698 F.2d 486 (D.C. Cir.1983); *United States v. Levy,* 577 F.2d 200 (3rd Cir.1978); *U.S. v. Orman,* 417 F.Supp. 1126 (D.C.Colo.1976); *People v. Mason,* 97 Misc.2d 706, 411 N.Y.S.2d 970 (1978); *Commonwealth v. Manning,* 373 Mass. 438, 367 N.E.2d 635 (1977); *People v. Moore,* 57 Cal.App.3d 437, 129 Cal. Rptr. 279 (1976); *Barber v. Municipal Court, supra.*

385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); *Wilson v. Superior Court, supra.* Dismissal of the charges, although obviously an extreme sanction, may be the only remedy in order to protect a citizen's fundamental rights. *See Olmstead v. U.S.,* 277 U.S. 438, 470, 48 S.Ct. 564, 575, 72 L.Ed. 944 (1928) (Holmes, J., dissenting) ("I think it a less evil that some criminals should escape than that the Government should play an ignoble part"). We express no opinion in this case as to the ultimate appropriate remedy.

In summary, we are not in the position to determine whether the state used or benefited from the invasion of defendant's right to counsel. We refuse to rule on this question speculatively and remand for a full evidentiary hearing on the matter. Dismissal of the charges would be premature at this juncture. The trial court should make separate and detailed findings regarding the motive behind the seizure of defendant's papers, the use made of them, whether the interference with the attorney relationship was deliberate, whether the state benefited in any way from the seizure, if the papers were used how any taint was purged in defendant's trial and whether defendant was, in fact, prejudiced.

Remanded.

HOLOHAN, C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.