764 P.2d 1105

**STATE of Arizona, Appellee,**

v.

**Steven Gregory WARNER, Appellant.**

**No. CR–86–0226–AP.**

Supreme Court of Arizona,
En Banc.

Nov. 8, 1988.

———

Robert K. Corbin, Atty. Gen., William J. Schafer, III, Chief Counsel, Crim. Div., Greg A. McCarthy, Asst. Atty. Gen., Phoenix, for appellee.

Gordon J. O'Brien, Lake Havasu City, for appellant.

GORDON, Chief Justice.

Appellant, Steven Gregory Warner, was tried and convicted of four felony counts: first degree murder, aggravated robbery, and two counts of theft. The trial court sentenced defendant to concurrent terms of life imprisonment for the murder, 10 years for the aggravated robbery, 1.7 years for one theft, and 10 years for the other theft. Warner appealed to this Court, and sought a reversal of his convictions and dismissal of the charges against him. He claimed that the State violated his attorney-client privilege when it seized documents from his cell. On appeal, this Court found that

Warner's right to counsel was presumptively violated when the State seized these privileged documents. *State v. Warner*, 150 Ariz. 123, 722 P.2d 291 (1986) [hereinafter *Warner I*]. On the record before this Court, however, it was unclear whether the State's violation prejudiced the defendant. *Id.* at 128, 722 P.2d at 296. We remanded for a full evidentiary hearing. The defendant now appeals from the findings and conclusions of the trial court following the evidentiary hearing. We have jurisdiction pursuant to the Ariz. Const. art. 6, § 5(3), and A.R.S. §§ 13–4031, –4033.

## I.  FACTUAL AND PROCEDURAL CONTEXT

The facts of this case are reported in detail in *Warner I*, 150 Ariz. 123, 722 P.2d 291 (1986). We repeat only those facts necessary to resolve the issue before us. The State prosecuted both Warner and his friend, Robert Merwin, for the murder of a man in Parker, Arizona. Merwin negotiated a plea agreement which enabled him to plead guilty to second degree murder in exchange for his testimony against Warner. The police placed Merwin and defendant in the same jail facility in Parker while awaiting trial. Authorities at the jail received various tips from inmates that Warner and Merwin discussed altering their testimony for trial. Informers reported that Merwin had written a document, which Warner had in his cell, evidencing his planned perjury. Acting on these tips, jail personnel searched defendant's cell and seized all of the papers they could find. They copied the papers, returned the originals to defendant's cell, and gave the copies to the County Attorney.

The County Attorney discovered a few days before trial that some of the documents were privileged transcripts of meetings between the defendant and his attorney. He notified defense counsel and the court that he had possession of the documents and, avowing that he had not read or used them in any way, tendered the documents in a sealed envelope to the trial court. The defendant moved to dismiss based on the State's violation of the attorney-client privilege. The trial court denied this motion. Defendant again raised the issue of the seizure of the papers in his motion for new trial. The trial court denied this motion as well.

On appeal, this Court stated that the State presumptively violated Warner's rights to confer privately with counsel and to obtain effective assistance of counsel when it provided the County Attorney privileged information. *Id.* at 127, 722 P.2d at 295. We then turned to the difficult question of the proper remedy for this presumed violation. *Id.* at 128–29, 722 P.2d at 296–97. We noted that the United States Supreme Court's approach to remedying Sixth Amendment violations has been to identify and neutralize any taint resulting from the violation by tailoring relief that will assure the defendant of the effective assistance of counsel and a fair trial. *Id.* (citing *United States v. Morrison*, 449 U.S. 361, 365, 101 S.Ct. 665, 668, 66 L.Ed.2d 564 (1981), *reh'g denied, United States v. Morrison*, 450 U.S. 960, 101 S.Ct. 1420, 67 L.Ed.2d 385 (1981)). We did not believe that every case in which a violation occurred must result in dismissal. "Absent [prejudicial] impact on the criminal proceedings, ... there is no basis for imposing a remedy in [a] proceeding, which can go forward with full recognition of defendant's right to counsel and to a fair trial." *Warner I*, 150 Ariz. at 128, 722 P.2d at 296 (quoting *Morrison*, 449 U.S. at 365, 101 S.Ct. at 668, 66 L.Ed.2d at 568–69).

Because the trial court held no evidentiary hearing upon learning of the State's invasion, we remanded the case with instructions to conduct a hearing to "determine how, if at all, defendant was prejudiced by the State's intrusion, with the burden on the State to prove the defendant was accorded a fair trial." *Warner I*, 150 Ariz. at 128, 722 P.2d at 296. We also gave the State the burden to demonstrate that the invasion did not taint any evidence introduced at trial. *Id.* Finally, after stating that the trial court must be convinced beyond a reasonable doubt that defendant obtained a fair trial, we stated:

In summary, we are not in the position to determine whether the state used or benefited from the invasion of defendant's right to counsel. ... The trial court should make separate and detailed findings regarding the motive behind the seizure of defendant's papers, the use made of them, whether the interference with the attorney relationship was deliberate, whether the state benefited in any way from the seizure, if the papers were used how any taint was purged in defendant's trial and whether defendant was, in fact, prejudiced.

*Warner I,* 150 Ariz. at 129, 722 P.2d at 297.

On remand, the trial court conducted the evidentiary hearing as required by *Warner I.* At the conclusion of the hearing, the judge made the following findings and conclusions:

.    .    .    .    .

On February 5, 1985 the defendant's cell at the La Paz County jail was searched by Lt. Newman. The search was conducted after he received information of an alleged perjury and that written documentation of the perjury would be found in the cell. The documents as described were not privileged information. The officer's intent in searching the cell was to obtain the desired documentary evidence of the perjury. He did not intend to violate the attorney-client privilege. [Paragraph 1]

Upon searching defendant's cell, the officer located various documents, removed them from the cell and made copies of those documents. All of the documents seized were copied and are now contained within exhibit AAA. [Paragraph 2]

The seized material included a 10 page typewritten summary of an interview by defense counsel with the defendant (exhibit 1). The summary includes a detailed statement of the activities of the defendant and co-defendant prior to the time of the killing. It did not include the circumstances of the killing. Exhibit 1 is privileged material. [Paragraph 3]

The officer who seized exhibit 1 may have read parts of it but did not read it in its entirety. He did not recognize it as privileged material. He delivered the materials to the office of the County Attorney within several days of the seizure. [Paragraph 4]

The officer did not discuss the contents of exhibit 1 with the County Attorney at the time of the seizure or later in preparation for the trial. [Paragraph 5]

A paralegal in the County Attorney's Office, at the request of the County Attorney, reviewed the contents of exhibit AAA. It is likely the exhibit 1 was read by the paralegal. The paralegal assisted the County Attorney in preparation for trial but did not disclose to the County Attorney the contents of exhibit 1. [Paragraph 6]

Approximately one week before trial the County Attorney reviewed the contents of exhibit AAA. He read the first three paragraphs of exhibit 1 and recognized it as privileged information. He did not read the remainder of exhibit 1. The first three paragraphs of exhibit 1 contain background information on the activities of the defendant prior to his coming to the Parker area, were facts which were uncontested at trial, did not implicate the defendant in the killing and would have been of little value to the prosecution. [Paragraph 7]

On Saturday, March 2, 1985, defense counsel was advised that the state had in its possession the seized material. He was given an opportunity to examine the contents of exhibit AAA but did not do so. [Paragraph 8]

Trial commenced on March 5. Defendant urged his motion to dismiss for violation of the attorney-client privilege and exhibit AAA was filed with the Court. Defense counsel did not examine the contents of exhibit AAA. [Paragraph 9]

Defendant and his counsel met after the conclusion of the Court proceedings of March 5. Defense counsel incorrectly assumed that the state had in its possession summaries similar in nature to exhibit 1 which contained details of the killing. The belief that the prosecution had details of the killing was a factor

considered in planning trial strategy. [Paragraph 10]

Trial resumed on March 6. Prior to opening statements the County Attorney stated that he did not want to use the documents at trial. The trial proceeded and the defendant gave testimony on March 12. The state did not use information from exhibit 1 either directly or indirectly during the trial. [Paragraph 11]

The Court concludes that the defendant was not prejudiced by the state coming into possession of privileged materials. [Paragraph 12]

Defendant and defense counsel stated in the hearing of October 15, 1986 that defendant was required to testify at trial in conformity with the details of the killing set forth in the summaries as a result of their belief that the prosecution had those summaries. Defense counsel admitted, however, on cross-examination that he knew the summaries could not be used for impeachment purposes. [Paragraph 13]

The Court also concludes therefore that the defendant was not prejudiced by his mistaken belief that the state had summaries containing details of the killings. [Paragraph 14] [Record on Appeal, Instruments]

Warner appeals from these findings and conclusions and raises the following additional issues:

1) Did the State fulfill its burden to prove defendant was accorded a fair trial and that no evidence introduced at trial was tainted by the invasion?·

2) Did the trial court demonstrate that it was "convinced beyond a reasonable doubt that defendant will be able to obtain a fair trial"?[1]

## II.  ANALYSIS

### A.  *Adequacy of Trial Court's Findings*

■ The appellant claims that the trial court's findings are inadequate.  His primary contention is that the trial court "ignored or at best dismissed without discussion an extremely important" conflict in the testimony between the State's witnesses and the defense witnesses.

At the evidentiary hearing, Lt. Newman, the officer who conducted the search, said that all of the documents that the police found were copied and sent to the County Attorney.  Lt. Newman also testified that exhibit AAA, the envelope that was opened at the hearing, contained every document sent to the County Attorney.  Likewise, Mr. Suskin, the County Attorney who received the documents and worked on the case, said that exhibit AAA, as opened in court, contained all of the documents delivered to his office.

In stark contrast, Garth Nelson, Warner's attorney at all times before this appeal, testified that Warner had at least three transcripts of subsequent attorney-client interviews in his cell at the time of the search.  Although the transcript contained in exhibit 1 dealt only with preliminary matters, the additional transcripts dealt with the killing itself.  Moreover, Nelson testified that he had sent letters to Warner discussing the "status of the case or the things that we proposed to do."  Nelson believed that authorities seized these letters and at least three transcripts.

Warner also testified that at the time of the search, he possessed three or four transcripts of attorney-client meetings.  Warner testified that he kept all of these transcripts in the same file in his cell.  He denied that exhibit AAA contained all of the documents that were in the file.

Warner now claims that the trial judge "completely ignored" this crucial discrepancy in the testimony.  He surmises that the State did not disclose its possession of these additional documents because the documents were simply too prejudicial.  He argues that "[i]t is fundamental that conflicting evidence on a material point raises some degree of doubt...."

---

**1.**  Defendant also questions whether prejudice to the defendant must be proven in light of the State's violation of defendant's rights.  We considered this contention in *Warner I* and find no reason to alter our ruling.

We disagree with appellant on both the facts and the law. The facts do not suggest that the trial court "completely ignored" the defense witnesses. Rather, they suggest that the trial court listened to all of the testimony and found the State's witnesses more credible on this point. Even if we accept the proposition that conflicting evidence creates some degree of doubt, the law certainly makes no presumption that conflicting evidence always creates a reasonable doubt. If this was so, no criminal defendant whose case involved any disputed facts could ever receive a guilty verdict. To the contrary, the law presumes that the credibility of witnesses is an issue to be resolved by the trier of fact. *State v. McDaniel*, 136 Ariz. 188, 195, 665 P.2d 70, 77 (1983); *State v. Hunter*, 112 Ariz. 128, 129, 539 P.2d 885, 886 (1975).

Moreover, it is not the function of an appellate court to retry conflicts in evidence. *State v. Ford*, 108 Ariz. 404, 408, 499 P.2d 699, 703 (1972), *cert. denied*, 409 U.S. 1128, 93 S.Ct. 950, 35 L.Ed.2d 261 (1973). "Appellate review of the trial court's findings of fact is limited to a determination of whether those findings are clearly erroneous." *State v. Burr*, 126 Ariz. 338, 339, 615 P.2d 635, 636 (1980).

Applying these principles here, we hold that the trial court adequately addressed each of the specific inquiries that we set out in *Warner I*, 150 Ariz. 123, 129, 722 P.2d 291, 297 (1986). The court resolved the following questions in its findings: regarding the motive behind the seizure of defendant's papers in Paragraph 1; the use made of the papers in Paragraph 11; whether the interference with the attorney relationship was deliberate in Paragraphs 1 and 7; whether the State benefited from the seizure in Paragraphs 7, 11, 12, and 14; how any taint was purged in defendant's trial in Paragraphs 7, 11, 12, and 14; and whether Warner was, in fact, prejudiced in Paragraphs 12 and 14. After reviewing the record, we conclude that the record supports each of these findings.

However, one of appellant's asserted sources of prejudice deserves attention. After authorities seized his documents, Warner allegedly lost confidence in Nelson, his counsel, because he believed Nelson was working with the prosecution. Warner testified at the evidentiary hearing that only he, Nelson, and Nelson's secretary knew that the transcripts were in Warner's cell. Thus, according to Warner, if the transcripts were taken, Nelson must have been working with the prosecutor.

Additionally, Nelson testified that for "two or so weeks before the trial ... Warner ... seemed to be more secretive and less frank" than before. At the time, Nelson attributed this change of attitudes to normal pre-trial concerns. Now, Warner contends that his loss of confidence in his counsel constitutes prejudice resulting from the State's violation of his attorney-client privilege.

The trial court, however, heard this testimony and concluded that defendant suffered no prejudice. We believe the record supports this finding. First, Warner admitted to having grave doubts regarding Nelson long before the seizure of the documents. Second, at the hearing Warner could not respond to a question regarding why Nelson would have had defendant's cell searched to find these transcripts rather than simply mailing the State a copy. The evidence supports the trial court's finding that defendant suffered no prejudice, therefore, we find no abuse of discretion and will not disturb the trial court's findings.

### B. Other Matters Affecting Warner's Right to a Fair Trial

■ Warner contends that even if the trial court adequately made the specific findings required by *Warner I*, the trial court did not comply with the other requirements in our opinion. Specifically, Warner disputes that the State fulfilled its burden to demonstrate that Warner received a fair trial. *See Warner I*, 150 Ariz. at 128, 722 P.2d at 296. He contends that the testimony at the evidentiary hearing demonstrates as a matter of law that he did not receive a fair trial.

The basis for appellant's contention is the belief he and Nelson shared that the

State possessed transcripts of approximately four attorney-client meetings. According to Warner and Nelson, the transcripts revealed Warner's account of the killing. In at least one of the transcripts, Warner told Nelson that he remembered the victim grabbing his (Warner's) testicles. He then remembered falling forward, reaching for a brick, and hitting the victim over the head with it.

At the evidentiary hearing, Warner and Nelson testified that after these meetings, as the trial approached, Warner told Nelson that he was mistaken in saying he remembered hitting the victim with the brick. Instead, he claimed to remember blacking out immediately after the testicular grabbing. Upon finding that the State possessed the privileged documents, however, Nelson counseled Warner to testify in conformity with his statements recorded in the transcripts of their earlier meetings. Nelson testified that he told Warner that if his testimony varied from the transcripts, he would likely be cross-examined or otherwise impeached.

Warner now contends that because of the pressure put on him as a result of the State's actions, "he felt a compulsion to testify, and the nature of his testimony was necessarily tailored to the situation." Because of this compulsion, Warner contends that the State's invasion tainted his own testimony and deprived him of a fair trial.

We believe that the trial court's findings and the facts brought out at trial adequately dispose of this contention. First and foremost, the trial court heard Warner and Nelson testify at the evidentiary hearing regarding their allegations of prejudice resulting from their belief that the State possessed additional transcripts. Nonetheless, the judge concluded that defendant suffered no prejudice from either the deprivation or their mistaken belief. [Para 12, 14] Again, we will not disturb this finding unless it is clearly erroneous. *See State v. Burr*, 126 Ariz. 338, 339, 615 P.2d 635, 636 (1980).

We also doubt that Warner felt a significant degree of pressure to testify that he hit the victim with a brick due to his belief that the State possessed additional transcripts of attorney-client meetings. Prior to the State's seizure of the documents, Warner already confessed to a police officer that the victim grabbed his testicles, and that he reacted by hitting the victim over the head with a brick. Merwin's pretrial statements (and later his testimony) corroborated these statements and reiterated that he saw Warner hit the victim twice with a brick.

Finally, Nelson testified at the evidentiary hearing that he knew that the prosecution could not admit any transcripts seized by the police into evidence to impeach Warner. Moreover, he admitted that he feared Warner could be impeached by other means such as jail inmates' testimony.

Based on the record, we find that the trial court's conclusion that defendant suffered no prejudice due to his mistaken belief that the State had additional transcripts of attorney-client meetings was not clearly erroneous. We therefore believe that the State fulfilled its burden to prove that the court did not receive tainted evidence at trial and that the State's seizure of privileged documents did not impair Warner's ability to receive a fair trial.

### C. Did the Trial Court Err in Not Using the Words "Beyond a Reasonable Doubt"?

■ In *Warner I*, we stated that "[i]n this and all further cases where the State invades the attorney-client relationship, . . . [the] trial court must be convinced beyond a reasonable doubt that the defendant will be able to obtain a fair trial." 150 Ariz. at 128, 722 P.2d at 296. Warner alleges that the trial court ignored this issue when it failed to make a separate finding that it was convinced beyond a reasonable doubt that Warner received a fair trial.[2]

The State responds that though the trial court failed to expressly find beyond a rea-

---

**2.** Warner again urges us to find that the conflicting evidence presented at the hearing necessitates the creation of an element of doubt.

Brief for Appellant at 19. For the reasons stated in Section II.A., *supra,* we reject this contention.

sonable doubt that defendant received a fair trial, the court's express findings imply the court's belief that Warner received a fair trial beyond a reasonable doubt. Specifically, the trial court found that the only privileged document was a transcript of a meeting in which only the events leading up to the killing were discussed. The trial court also found that the State did not use this information directly or indirectly during trial. Finally, the trial court concluded that defendant suffered no prejudice from either the seizure or Warner's mistaken belief as to what authorities seized.

We agree that these findings strongly indicate that the trial court believed beyond a reasonable doubt that Warner received a fair trial. It also strains reason to assume that the trial court, which carefully made all of the specific and detailed findings we enumerated at the end of *Warner I*, simply ignored the standard of proof we had set out only one paragraph before. We will engage in no such assumption. *Cf. State v. Hadd*, 127 Ariz. 270, 619 P.2d 1047 (Ct. App.1980) (trial court presumed to know and apply rules of evidence and to not consider inadmissible matters in making its findings); *State v. Reynolds*, 125 Ariz. 530, 611 P.2d 117 (Ct.App.1980) (jurors are presumed to know their duty and we will not presume they ignored instructions).

Having previously reviewed the record for fundamental error, and finding none, we affirm Warner's convictions and sentences.

FELDMAN, V.C.J., and CAMERON, HOLOHAN and MOELLER, JJ., concur.