817 A.2d 277

**Deon Christopher CARTER**

v.

**STATE of Maryland.**

**No. 2396, Sept. Term, 2001.**

Court of Special Appeals of Maryland.

Feb. 26, 2003.

510

Sherrie B. Glasser, Asst. Public Defender and Gregory Faherty (Law Student pursuant to Rule 16) (Stephen E. Harris, Public Defender, on the brief) Baltimore, for appellee.

Edward J. Kelley, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Patricia Jessamy, State's Attorney for Baltimore City, on the brief) Baltimore, for appellee.

Argued before MURPHY, C.J., KENNEY and GREENE, JJ.

MURPHY, C.J.

In the Circuit Court for Baltimore City, a jury convicted Deon Christopher Carter of first degree felony murder. The State's evidence was sufficient to establish that he killed one Shawn Powell on June 30, 2000. Because that evidence included two documents that were prepared by appellant and seized from the cell in which he was confined while awaiting trial, he argues that he is entitled to a new trial on the ground that

**THE TRIAL JUDGE ERRED IN FAILING TO SUPPRESS PERSONAL PAPERS SEIZED FROM APPELLANT'S JAIL CELL WHICH HAD BEEN PREPARED IN RESPONSE TO A REQUEST BY HIS ATTORNEY.**

For the reasons that follow, we are persuaded that the documentary evidence at issue should have been suppressed. Because we are not persuaded beyond a reasonable doubt that this error was harmless, we shall vacate the judgment of conviction and remand for a new trial.

### Background

On December 1, 2000, while appellant was being transferred from a jail cell in the Baltimore City Central Booking facility to a jail cell in the Maryland Super-max facility, a Central Booking officer searching appellant's cell discovered two pieces of paper that attracted her attention. One item (State's exhibit 27) was a map of the crime scene that included statements relating to the items shown on the map,[1] such as a reference to "the only place witness could seen who killed victim," and "victim dead on this block and drift 1 block east

---

1. See Appendix A.

and crash into wall." The second item (State's exhibit 28) was a piece of paper on which appellant had drawn a map of the 1400 block of Fulton Avenue that included certain house numbers.[2] This piece of paper also contained (1) a statement that the "witness lives in one of these houses," (2) a list of eight "Things to do," the fifth item being "Make sure Big Nick ain't said shit?" and (3) the following

> Clue—Witness is a older person who wear glasses, lives down by the corner and Im almost sure it's a female. Check between the last 4 to 5 houses mainly!

These exhibits were seized by the Correctional Officer and turned over to Detective Dennis Rafferty of the Baltimore City Police Department Homicide Squad. After the circuit court denied appellant's motion for suppression of the exhibits, they were received into evidence pursuant to the following stipulation announced to the jury during Detective Rafferty's direct examination:

> [I]t is agreed between the State and the Defense, that a law clerk for the Office of the Public Defender ... was present when the Attorney for the Defendant ... provided the Defendant with a copy of the State's discovery reply and asked Defendant to draw maps and diagrams of the area and to write any thoughts or questions the Defendant may have had for his attorney based on the State's discovery reply.
>
> The State's discovery reply included the ballistic report, the autopsy report, the blood evidence report, crime scene and six pages of run-sheet reports, and fingerprint and Statement of Charges.
>
> It is also stipulated that ... that law clerk for the Office of the Public Defender, would testify that he and [appellant's trial counsel] visited the Defendant and provided the Defendant with the items that I just mentioned before the search of the Defendant's jail cell.... The search that

---

2. See Appendix B.

resulted in the recovery of those items occurred on December 1st, 2000.

It is also stipulated that the Defendant, Mr. Carter, has stated that he did not receive those items, the State's discovery reply until mid-December or the beginning of January, 2001.

... And it is also stipulated that the Defendant prepared those exhibits 27 and 28.

Any objections, [appellant's counsel]?

[Appellant's Counsel]: No, other than my continuing objection to the admissibility of the items.

THE COURT: Continuing objection for those reasons considered previously.

Detective Rafferty's direct examination included a discussion of statements of fact written on the exhibits (e.g., "victim dead on this block and drift one block east . . .," and "Casing flies right.") that did not appear in the police reports. Appellant did not testify at trial.[3] During closing argument for the defense, appellant's counsel argued that the exhibits did not prove that appellant killed the victim. The prosecutor's rebuttal argument included the following comments:

Look, all along, he's been trying to outwit everybody. Now, he is trying to outwit you. And one of the things that [appellant's counsel] is trying to tell you is how unfair it was that they went into the jail cell and took out these exhibits.

Ladies and gentlemen, understand, let me make it very clear. They didn't go out, they didn't go to the jail cell to take these things. They were moving him to a new facility. They were searching his things when they came across these things. Okay, so, I'm not sure how unfair she's talking about. But one of the things that she says, well, [she] had him prepare all these things.

---

**3.** The portion of the stipulation concerning what appellant "stated" about the exhibits was based upon appellant's pre-trial hearing testimony.

Remember the stipulation, one of the stipulations that we had in this case, the thing that we agreed on between the State and the Defense was that he said he said he didn't get the State's discovery response with all of the information in it until mid-December or early January. That is after the search of his jail cell on December 1st. Okay?

He knows what's going on. He knows he did it. I have no question he did this for his lawyer. I'm not disputing that. But he gets all this information. I mean, he practically admits it, and we practically agreed to it through our stipulation.

Look at this. Number five, "Make sure that Big Nick ain't said shit." Pardon my language. I or we would love to know who Big Nick is. You know why? Because Big Nick also knows that Deon Carter is guilty. He wants to make sure Big Nick didn't talk.

Why else would you write this? You're smart. All of you are smart. You have common sense. You're supposed to just ignore this?

## The Ruling at Issue

During the pretrial hearing on the admissibility of State's exhibits 27 and 28, the State argued that (1) the failure of appellant's trial counsel to litigate this issue earlier constituted a "waiver by inaction," (2) the exhibits were not protected by any privilege, and (3) the search of appellant's jail cell did not violate any of his constitutional rights. The suppression hearing court ultimately ruled as follows:

THE COURT: Good morning all. The first order of business is to make a ruling on [the] Defense Motion to Suppress. You will recall that the Court held a hearing on the motion yesterday and took it under advisement for the evening and is now prepared to rule on it. I've had an opportunity to read the case submitted by the Defense, and the cases contained in the Memorandum and the attachment submitted by the State.

Based upon a reading of those cases, the Court holds that the Motion of the Defense to Suppress should be and is hereby denied.

Unfortunately, that ruling does not include any findings of fact. We shall, however, address each of the State's arguments.

### The State's "Waiver by Inaction" Argument

The State argues that, because appellant's trial counsel did not file a timely motion for return of items protected by the attorney-client privilege, there has been a waiver of the issue of whether State's exhibits 27 and 28 should have been suppressed. The following transpired after the prosecutor, quoting from *In Re: Grand Jury*, 138 F.3d 978 (3d Cir.1998),[4] argued that the objection interposed by appellant's trial counsel had been waived because appellant's counsel had not "move[d] the Court" for an order compelling the State to return the exhibits:

[The Prosecutor]: So in this case there was no Motion to Compel filed, Your Honor. Although I do agree there was an objection raised by [appellant's counsel] about the use of the information.

[Appellant's Counsel]: Judge, not only was there an objection, Counsel and I discussed this numerous times.

---

**4.** The prosecutor quoted the following portion of the opinion:

"The party must pursue all reasonable means to restore the confidentiality of the materials and to prevent further disclosures within a reasonable period to continue to receive the protections of the privilege."

138 F.3d at 981. *In re: Grand Jury* involved the issue of whether FBI agents investigating the kidnaping of one Anne Marie Fahey were required to return a "time line" and other notes prepared by the target of that investigation—Thomas J. Capano, Esq.—who had hidden the documents in the office of a colleague. Capano was ultimately convicted of the first degree murder of Ms. Fahey, and was sentenced to death. In the Supreme Court of Delaware, Capano asserted sixteen grounds for reversal of his conviction and sentence, but he did not claim that any of the evidence presented at his trial was derived from the investigators' use of privileged information. Capano's conviction and sentence were affirmed by the Supreme Court of Delaware. *Capano v. State*, 781 A.2d 556 (Del.Supr.2001).

[The Prosecutor]: We discussed it numerous times. I agree.

[Appellant's Counsel]: I was going to go to Judge Prevas on a pretrial discovery on this discovery issue, and Counsel and I discussed the fact that we would litigate this at the time of trial, that that would be when we litigate. So for the State to act as though, you know, I forfeited my client's privilege because I didn't file this Motion to Compel, its just ludicrous. Its' just completely outrageous.

[The Prosecutor]: Your Honor, I'm sorry. I'm going to disagree with that. We did discuss litigating it, but that is exactly what the U.S. Attorney did in the cases. A U.S. Attorney said no, I don't believe it's privileged, and that's exactly what I told [appellant's counsel] over the phone many times.

I'm not disputing what she's saying. Let me make that very clear. I'm not saying that those things did not happen. We spoke about it on the phone. She wanted the documents back. She said that I shouldn't be allowed to use them at trial, and of course I was saying no, you know, respectfully we disagreed, and we said, we'll, you know, fight about it later.

But the point is is [sic] that is exactly what happened in the [*In Re: Grand Jury* ] case.

As the State agreed to litigate this issue prior to jury selection, the State cannot now complain that appellant's trial counsel did not preserve the issue for our review. Moreover, when "the court is not sandbagged; [and] is afforded the opportunity of correcting any error it may have made ... the purpose of the [waiver] rule, and the policy underlying it, will have been met, and those grounds [that have been asserted at this point in the trial] are preserved for review." *Banks v. State*, 84 Md.App. 582, 589, 581 A.2d 439 (1990).

### The State's Arguments that the Exhibits are not Privileged

During the suppression hearing, appellant testified that he had prepared the exhibits at the request of his counsel. The

State argued that this testimony was false. As set forth above, however, when referring to the exhibits during rebuttal argument, the prosecutor stated, "I have no question he did this for his lawyer. I'm not disputing that." Under these circumstances, we shall not hypothesize that the suppression hearing court denied appellant's motion on the ground that the defense failed to prove that appellant prepared each exhibit at the request of his trial counsel.

 The State also argues that, because appellant did not take any precautions to identify the exhibits as "privileged" documents, an "inadvertent disclosure" occurred when the exhibits were discovered during the search of appellant's cell. According to the State, the exhibits are admissible under the "intermediate" test that this Court established in *Elkton Care v. Quality*, 145 Md.App. 532, 805 A.2d 1177 (2002). As we stated in that opinion, under the intermediate test, the court makes a "fact specific case-by-case analysis to determine whether the privilege has been waived." *Id.* at 545, 805 A.2d 1177. We are persuaded that appellant's failure to designate the exhibits as "privileged" does not render the exhibits admissible under the theory of inadvertent disclosure.

 It is well settled that the attorney-client privilege applies to documents prepared by the client at the request of the attorney, provided that the documents "relate to professional advice and to the subject-matter about which such advice is sought." *Lanasa v. State*, 109 Md. 602, 617, 71 A. 1058 (1909). The documents at issue in the case at bar are protected by the attorney-client privilege.[5] We are also per-

---

5. It is well settled that the attorney-client privilege does not apply to everything that the client says—or writes—to the attorney. For example, if the exhibits that appellant prepared included a request that appellant's counsel present perjured testimony, the attorney-client privilege would not apply to that request. *State v. Lloyd*, 48 Md.App. 535, 546, 429 A.2d 244 (1981). That privilege, however, does apply to the criminal defendant's request that defense counsel determine whether a potential witness has spoken with investigators. We are therefore persuaded that the attorney-client privilege applies to every item on the

suaded that these documents are protected by the attorney "work product" privilege. *Blair v. State,* 130 Md.App. 571, 608, 747 A.2d 702 (2000).

### The State's "Constitutional Seizure" Argument

The State argues that none of appellant's constitutional rights were violated when his cell was searched and when the Correctional Officer examined the State's exhibits 27 and 28 during that search. We agree that neither the search nor the examination of the documents at issue violated appellant's Fourth Amendment rights. Inmates have no reasonable expectation of privacy in their cells. *Hudson v. Palmer,* 468 U.S. 517, 526, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Appellant is not entitled to suppression of evidence seized from his cell on the ground that he was the victim of an unlawful search, or on the ground that Correctional Officers had no right to examine the exhibits. In an opinion filed on February 13, 2003, the Court of Appeals held "that once [an incarcerated defendant's visibly stained clothing was] taken and put into police custody, he had no reasonable expectation that [his clothing] would be kept private from police inspection." *Wallace v. State,* 373 Md. 69, 93, 816 A.2d 883 (2003). In the case at bar, no Fourth Amendment violation occurred when the Correctional Officer discovered and examined the exhibits that appellant had prepared at the request of his trial counsel. When, however, the Correctional Officers realized that the exhibits were unrelated to anything other than the criminal charges on which appellant was awaiting trial, the exhibits should have been returned to appellant rather than turned over to the police department.

The exhibits should not have been received into evidence because, in addition to the protections afforded by the attorney-client privilege and the attorney-work product privilege, a defendant awaiting trial on criminal charges has a Sixth Amendment right to counsel. That constitutional right

---

"Things to do" list appellant prepared for his trial counsel, including the request that refers to "Big Nick."

is violated when the attorney-client privilege of a person confined pending a trial on criminal charges is "undermined by state agents." *State v. Warner*, 150 Ariz. 123, 722 P.2d 291, 295 (1986).

In *Bishop v. Rose*, 701 F.2d 1150 (6th Cir.1983), the United States Court of Appeals for the Sixth Circuit affirmed a judgment of the United States District Court for the Middle District of Tennessee that ordered the State of Tennessee to release and/or retry James William Bishop, who had been convicted of second degree murder. While Mr. Bishop was confined in the Wilson County Jail, at the request of his defense counsel, he prepared a "handwritten statement detailing his activities and whereabouts" for the relevant period of time. This statement was discovered by employees of the Wilson County Sheriff's Department when they searched Mr. Bishop's cell after one of his cell mates attempted to escape. The statement was turned over to the prosecutor, who used it to impeach Mr. Bishop during his cross-examination. In affirming Mr. Bishop's conviction, the Tennessee Court of Criminal Appeals stated:

> The trial judge declined to allow the State to admit the document into evidence under direct examination but subsequently allowed its use for cross-examination of the defendant. We find no fault with that judgment. It is conceded that the authorities had the right to search the cell after the attempted escape came to their attention. Certainly they had a right to examine whatever may have been found there. There was no indication in the paper writing that it was a confidential instrument of any nature.

*Bishop v. State*, 582 S.W.2d 86, 89–90 (Tenn.Cr.App.1979).

The federal circuit court rejected the state's arguments that Mr. Bishop had failed to establish that he had been unfairly prejudiced by the trial court's ruling, explaining:

> Since the confidential information was used in this case for the benefit of the prosecution and to the detriment of the defendant, it is unnecessary for us to decide whether the communication of such information, without more,

may sufficiently establish prejudice to support a finding of a Sixth Amendment violation.

\* \* \*

The State argues that evidence obtained in violation of the Fourth Amendment may be used for impeachment purposes and that the same rule should apply to confidential communications between attorney and client. See *United States v. Havens,* 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980); *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). The situations are not analogous. *Havens* and *Harris* placed limits on the exclusionary rule by permitting illegally seized evidence to be used for impeachment. The use of the evidence in those cases did not implicate a separate and additional constitutional right. Only the prohibition against unlawful searches and seizures was involved. However, when the prosecution gets evidence before the jury which is based on confidential communications between the defendant his attorney it also impinges on the Sixth Amendment right to counsel. In this case we are not dealing with the scope of the judge-made exclusionary rule which is a remedy for a constitutional violation. Our concern is with a constitutional right which is at the heart of our adversary system of criminal justice.

701 F.2d at 1157. We agree with the federal circuit court that, even though no Fourth Amendment violation occurs when an agent of the government discovers and examines a document prepared by an incarcerated person at the request of his or her counsel, a Sixth Amendment violation occurs when the prosecution makes beneficial use of that document. We therefore hold that, in the case at bar, the introduction into evidence of State's exhibits 27 and 28 violated appellant's right to counsel.[6]

---

**6.** Because it is based upon the Sixth Amendment right to counsel, our holding is in no way inconsistent with *Wallace, supra.*

### The State's "Harmless Error" Argument

The victim, who had been shot in the back of the head, was found in the driver's seat of an automobile. The State's case against appellant included evidence that his fingerprints matched fingerprints lifted from the interior of that vehicle, evidence that appellant's hand print matched a hand print lifted from the front passenger side of that vehicle, evidence that appellant traveled to Virginia shortly after the crime, and evidence that appellant attempted to flee from the location at which he was arrested. The State therefore argues that, even if the trial judge erred in overruling appellant's objection to the introduction of State's exhibits 27 and 28, this ruling was harmless beyond a reasonable doubt. In light of the State's extensive use of these exhibits during Detective Rafferty's direct examination, the State's use of a "blow-up" of State's exhibit 28, and the above quoted portion of the State's rebuttal argument, we are not persuaded beyond a reasonable doubt that the erroneously admitted evidence "did not contribute to the guilty verdict returned against [appellant]." *Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665 (1976). Appellant is entitled to a new trial.

**JUDGMENT VACATED; CASE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.**

## Appendix A (State's Exhibit 27)

Appendix B (State's Exhibit 28)

Witness lives in one of these houses.

Larun St 1700

| 47 | 45 | 43 | 41 | 39 | 37 | 35 | 33 | 31 | 29 | 1427 | 1425 | | 1300 |

Witness

Car Crash

Kavanaugh #

Lorun St 1300

Bar Steps

Things to do.

1) Find out who was on them bar steps + what they saw?

2) Find out if anyone moved off the block?

3) Find out how many people wear glasses? (he/she)

4) Find out what Rob know and who was that lady he saw talking to the police? And did she wear glasses.

5) Make sure Big Neck ain't said shit?

6) Find out who was at the scene when police came, who Miss Jackie & Big Rick remember out there from their block and did anyone wear glasses?

7) Find out who all wear glasses at night not just reading glasses?

8) Find out who Big Bub was talking to the police?

Clue - Witness is a older person who wear glasses, lives down by the corner and I'm almost sure it's a female. Check between the last 4 to 5 houses mainly!