NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

_____

EDDIE B., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, E.B., *Appellees.*

No. 1 CA-JV 14-0237
FILED 3-17-2015

_____

Appeal from the Superior Court in Navajo County
S0900JD201400012
The Honorable Michala M. Ruechel, Judge

**AFFIRMED**

_____

COUNSEL

Criss E. Candelaria, Pinetop
By Criss E. Candelaria
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Nicholas Chapman-Hushek
*Counsel for Appellees*

---

**MEMORANDUM DECISION**

---

Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge Margaret H. Downie and Judge Patricia K. Norris joined.

---

**H O W E**, Judge:

**¶1**     Eddie B. ("Father") appeals the determination that his son, E.B., was a dependent child. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**     Father and Lorry H. ("Mother") are the biological parents of E.B., born in February 2007. In March 2014, the Arizona Department of Economic Security ("the Department")[1] received a call on its hotline with allegations that E.B. was being abused, prompting the Department to contact the child's parents.

**¶3**     A case manager went to E.B.'s school and interviewed the child. E.B. told her that "[F]ather hurts his mother" and Father "shot a gun inside the house, that he had pointed the gun to his head" while E.B. and Mother were "on the other couch, not the one that dad had shot." While talking about the gun incident, the case manager observed that E.B.'s "lips started to quiver" and that he "started to shake a little bit." Moreover, his "facial [expressions] were almost tortured, . . . squinting and having a really hard time with trying to get the information out." E.B. also stated that Father hit Mother and made a "closed fist going into an open palm."

**¶4**     E.B. told the case manager that "he was fearful that his father would hurt himself and/or hurt his mother" and that "his father would die." The case manager concluded that E.B. suffered from "severe anxiety" as a result of his treatment at home. The Department then had the Navajo

---

[1] During the Department's investigation of this case, the Arizona legislature eliminated the Child Protective Services and in its place created the Department of Child Safety, an entity independent of the Arizona Department of Economic Security. *See* A.R.S. § 8–451; S.B. 1001, 51st Leg., 2d Spec. Sess., ch. 1, § 20 (Ariz. 2014). To maintain consistency with the trial court record, we will refer to the parties as they existed at the time the Department petitioned for dependency.

County Sheriff's Office conduct a forensic interview of E.B. The child told the interviewer that his parents "got into a fight and his dad had a gun," that "dad fired the gun towards the couch and the bullet went through the couch," and that E.B. and Mother "were sitting on a different couch in the living room and saw what had happened." The Department took temporary custody of E.B. and placed him in the care of a foster family.

¶5        A few days later, a pediatrician examined E.B. to determine whether he suffered "any physical harm . . . based on the fact that . . . the child was very anxious during the [initial] interview . . . and that his emotional state appeared to be precarious." E.B. told her that the "scariest thing" that happened to him was when Father "shot right in the couch." When asked if E.B. had ever hurt his parents first, he responded: "Normally they hurt me first and I hurt them back. Dad says bad words to mom and always hurts my mom and lots of stuff. He normally punches her. He says he's gonna hurt my mom." Among other things, the doctor diagnosed E.B. with failure to thrive, "family stress," anorexia, and anxiety.

¶6        The Department then arranged a "team decision making meeting" to discuss the best course of action for E.B.—primarily to determine whether he could be safely returned home. Participating in the meeting were the Department's employees, Father, Mother, and E.B.'s grandmother, two uncles, an aunt, and a family friend. The group decided that the Department would take legal custody of E.B. and that he would live with his aunt. Father and Mother would have supervised visits twice a week for two hours.

¶7        The Department subsequently petitioned for dependency, alleging that E.B. was dependent as to both parents. The petition contended that Mother and Father abused E.B. as defined by A.R.S. § 8–201(14)[2] by placing the child "at risk of harm by repeatedly exposing him to severe domestic violence." It alleged that Mother and Father had a "prolonged history of engaging in domestic violence" with each other and "[f]ights between Father and [Mother] often occur[red] in the presence of seven-year-old" E.B. Mother waived her right to a trial, and E.B. was adjudicated dependent as to her.

¶8        A few months later, a psychologist evaluated E.B. The child reported that Father had tried to kill himself in front of E.B., that Father shot a gun while he and Mother were present, and that Father hit Mother. The

---

[2] A.R.S. § 8–201 was amended after the Department filed its petition. We will accordingly refer to the most current legislation.

doctor concluded that E.B. was an "anxious child who [had] been traumatized by the actions of his parents" and who had "an eating disorder." Moreover, he noted that E.B. was "showing psychological indicators/symptoms [that were] consistent with emotional abuse." The doctor clarified that E.B. was not scared of his parents, but rather feared "what his parents might do to one another, and in the case of his father what he was more anxious about was his father hurting himself, specifically ending his life." He also concluded that Father "would present the risk of emotion harm, of emotional trauma" to E.B.

¶9        After a contested dependency hearing, the trial court adjudicated E.B. dependent as to Father. It found that E.B. "reported to various agencies that he witnessed domestic violence" involving "physical altercations between his parents" and that he observed "his father threatening to kill himself." The court found that "[E.B.'s] reports were credible." The court also found that E.B. was "showing signs of emotional abuse, and PTSD, due to the chronic exposure of domestic violence in the home," which were "manifesting themselves in the child's physical health and ability to thrive."

¶10       In its order, the trial court also included its disposition of the case. It found that after considering E.B.'s health and safety, the goal of placement, and the services offered to the family and E.B., "the goal of reunification [was] appropriate and in the child's best interest." It set November 11, 2014, as the target date for reunification. It also found that "services including visitation, individual counseling, family therapy meetings, and interpretory services are necessary and appropriate to facilitate reunification." Father timely appealed.

**DISCUSSION**

¶11       Father argues that the trial court erred: (1) in admitting redacted police reports and testimony about the reports' contents, E.B.'s statements, and "unsubstantiated" allegations of domestic violence; (2) in permitting witnesses to comment on E.B.'s veracity and consistency; (3) by not conducting an Arizona Rule of Evidence 404(b) hearing regarding the "chronic domestic violence"; and (4) by not conducting a separate disposition hearing. On review, we view the evidence in the light most favorable to sustaining the court's findings, but we review de novo the court's interpretation and application of the dependency statute. *Oscar F. v. Ariz. Dep't of Child Safety*, 235 Ariz. 266, 267–68 ¶ 6, 330 P.3d 1023, 1024–25 (App. 2014).

**1. Hearsay**

**¶12** Father first argues that the trial court erred in admitting redacted police reports and a police officer's testimony about the reports' contents, E.B.'s statements, and unsubstantiated allegations of domestic violence. "A trial court has broad discretion in admitting or excluding evidence." *Lashonda M. v. Ariz. Dep't of Econ. Sec.*, 210 Ariz. 77, 82 ¶ 19, 107 P.3d 923, 928 (App. 2005). We will not disturb its decision absent a clear abuse of discretion and resulting prejudice. *Kimu P. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 39, 42 ¶ 11, 178 P.3d 511, 514 (App. 2008). A court abuses its discretion "when it exercises discretion in a manner that is either 'manifestly unreasonable' or based on untenable grounds or reasons." *Id.* (citation omitted).

**1a. The Police Reports**

**¶13** Subject to certain exceptions, the Arizona Rules of Evidence govern the admissibility of evidence at a dependency hearing. Ariz. R.P. Juv. Ct. 45(A). Generally, out-of-court statements offered in evidence to prove the truth of the matter asserted are inadmissible. Ariz. R. Evid. 801(c), 802. Moreover, hearsay included within hearsay is excluded by the rule if each part does not meet a hearsay exception. Ariz. R. Evid. 805. But several exceptions to the hearsay rule exist. *See* Ariz. R. Evid. 803–04. One of these exceptions is the public records exception, which provides that a record of a public office is admissible if it sets out "a matter observed [by an officer] while under a legal duty to report" and "the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness." Ariz. R. Evid. 803(8). Additionally, statements offered against an opposing party and were "made by the party in an individual or representative capacity" are not hearsay. Ariz. R. Evid. 801(d)(2).

**¶14** Here, the trial court admitted redacted versions of police reports, allowing only the "officers' observation[s] and statements of the parties" into evidence. The reports are admissible under the public records exception because they set out the officers' observations pursuant to their police duties and Father did not challenge—nor does the record show—that the reports lacked trustworthiness. *See Hudgins v. Sw. Airlines, Co.*, 221 Ariz. 472, 484 ¶ 31, 212 P.3d 810, 822 (App. 2009) (providing that reports reflecting matters a public official observed or heard and reported pursuant to his duties are admissible in civil cases pursuant to Rule 803(8)(B), the public records exception to the hearsay rule). Additionally, the reports do not contain hearsay within hearsay. Contrary to Father's argument, Father's and Mother's statements within the reports are not hearsay because the two

individuals were opposing parties in the dependency proceeding and they made the statements in their individual capacities. Finally, the police officer's testimony about the reports was limited to whether he was aware of their existence and Mother's general statements within them. Thus, his testimony was admissible because the officer had personal knowledge of the reports. *See* Ariz. R. Evid. 602. Consequently, the trial court did not err in admitting the redacted police reports, nor in admitting the officer's testimony about them.

¶15        Father further asserts that "admission of the reports and the testimony about them misled the court to give considerable weight to the contents of those admittedly unsubstantiated and unprosecuted occurrences." But a trial court is presumed to know and apply the rules of evidence and to not consider inadmissible matters in making its findings. *State v. Warner*, 159 Ariz. 46, 52, 764 P.2d 1105, 1111 (1988). Moreover, sufficient evidence in the record—without the police reports—supports the court's finding that E.B. was dependent as to Father. E.B. consistently reported to his case manager, a forensic interviewer, a pediatrician, and a psychologist that he witnessed domestic violence in his home and that the violence involved physical altercations between his parents. E.B. also reported consistently to these individuals that he witnessed Father threatening to kill himself. Further, based on their individual examinations of E.B., the two doctors concluded that the child was showing signs of emotional abuse due to his chronic exposure to domestic violence and that the abuse was manifesting in his physical health and ability to thrive.

### 1b. E.B.'s Statements

¶16        Father argues that the trial court erred in admitting E.B.'s statements, not including the statements about the gun, because they "were general statements that lacked specificity." A child's out-of-court statements of abuse or neglect are admissible without the child testifying, if such statements are accompanied by sufficient indicia of reliability. A.R.S. § 8–237; Ariz. R.P. Juv. Ct. 45(E). Thus, the determination is not whether E.B.'s statements were general or specific as Father contends; it is whether the time, content, and circumstances of the statements provide sufficient indication of their reliability. They do. E.B. reported the same incidents of domestic violence between his parents to four different individuals, in four different locations, and during four different times.

### 1c. "Unsubstantiated" Allegations

**¶17**          Father contends that because of the "insufficient factual foundation," the trial court erred in admitting the "unsubstantiated incidents" of domestic violence. But Father waived this issue for appeal by inviting the error. Defense counsel asked E.B.'s case manager about the incidents, thereby opening the door to further inquiry about them. *See State v. Kemp*, 185 Ariz. 52, 60–61, 912 P.2d 1281, 1289–90 (1996) ("[T]he open door or invited error doctrine means that a party cannot complain about a result he caused.") (citation and internal quotation marks omitted). Regardless of the waiver—and contrary to Father's argument—the court did not admit the Department's Comprehensive Child Safety and Risk Assessment package that contained the unsubstantiated incident reports.

### 2. E.B.'s Veracity and Consistency

**¶18**          Father next argues that the trial court erred by deferring its duty of assessing E.B.'s credibility to the expert witnesses by allowing them to repeatedly testify about E.B.'s veracity and consistency and adopting their credibility determinations in its order. But Father waived this argument because he provides no references to the record indicating where the court improperly deferred to the expert witnesses and because he cites no legal authorities for review to support this contention. *See* Ariz. R. Civ. App. P. 13(a)(6) (providing that an argument "must contain . . . contentions concerning each issue presented for review, with supporting reasons for each contention, and with citations of legal authorities and appropriate references to the portions of the record on which the appellant relies"); *State v. Felkins*, 156 Ariz. 37, 38 n.1, 749 P.2d 946, 947 n.1 (App. 1988) (claim abandoned when not supported by sufficient authority).

**¶19**          Regardless of the waiver, the trial court did not "repeatedly permit[]" witnesses to comment on E.B.'s veracity or credibility as Father contends. The record shows that defense counsel diligently objected when a witness talked about E.B.'s veracity or credibility. The majority of the time, the court sustained the objections. The one instance where the court overruled the objection and did not ask counsel to rephrase was when the case manager talked about her observations—based upon her training and experience and considering consistency—of whether E.B.'s statements were true. The court stated that her answer went to her observations, not E.B.'s credibility. To the extent that her statements did address the child's credibility, we presume nonetheless that the court knew and applied the rules of evidence and did not consider the inadmissible statements in making its findings. *See Warner*, 159 Ariz. at 52, 764 P.2d at 1111.

### 3. Rule 404(b) Hearing

**¶20**          Father also contends that the trial court erred by not conducting an Arizona Rule of Evidence 404(b) hearing for the "chronic domestic violence" "insinuations" "as contained [in] both the police reports and the testimony about the contents of the police reports." But Father waived this issue by not presenting it to the trial court. *See Continental Lightning & Contracting, Inc. v. Premier Grading & Utilities, LLC*, 227 Ariz. 382, 386 ¶ 12, 258 P.3d 200, 204 (App. 2011) (providing that "legal theories must be presented timely to the trial court so that the court may have an opportunity to address all issues on their merits," and if not, it is waived on appeal). Although Father presented a Rule 404(b) objection "regarding other act evidence that is outside the confines of the petition," he did not object to—but instead agreed to the admission of—"previous acts of domestic violence, up to and including the one which led to CPS removing the child from the parents' care." Thus, this issue is waived. But even if it was not, Rule 404(b) is inapplicable because this is not a case where "other crimes, wrongs, or acts" were admitted "to prove the character of a person in order to show action in conformity therewith." Ariz. R. Evid. 404(b).

### 4. Disposition Hearing

**¶21**          Father argues finally that the trial court erred by not conducting a disposition hearing following the dependency adjudication, thereby violating Father's due process rights. He emphasizes that the court did not address him in "open court" as provided for in Arizona Rule of Procedure for the Juvenile Court 56(E)(5). But Father also waived this issue by not presenting it to the trial court. *See Motzer v. Escalante*, 228 Ariz. 295, 298 ¶ 16, 265 P.3d 1094, 1097 (App. 2011) ("[A]rguments not made at the trial court cannot be asserted on appeal."); *State v. Kinney*, 225 Ariz. 550, 554 ¶ 7, 241 P.3d 914, 918 (App. 2010) ("To preserve an argument for review, the defendant must make a sufficient argument to allow a trial court to rule on the issue."). After the court issued its order, Father pursued no action to preserve his claim for appeal, including moving to set aside the judgment under Arizona Rule of Procedure for the Juvenile Court 46(E). *See* Ariz. R.P. Juv. Ct. 46(E) (providing that a motion to set aside judgment shall conform to Arizona Rule of Civil Procedure 60(c)); Ariz. R. Civ. P. 60(c) (providing that a party may be relieved from a final judgment because of "mistake, inadvertences, surprise or excusable neglect" or "any other reason justifying relief from the operation of the judgment").

**¶22**          Regardless of the waiver, Father has made no offer of proof— and the record does not indicate—that he was prejudiced. Specifically,

Father does not argue that having a separate hearing would have persuaded the court to reach a different result, nor does he challenge the court's findings.  In fact, the disposition order was extremely favorable to Father. The court found that family reunification was in E.B.'s best interest and ordered services such as visitation, individual counseling, and family therapy meetings to facilitate reunification. It also set November 11, 2014, as the target date for reunification, a mere three months away.

## CONCLUSION

¶23        For the foregoing reasons, we affirm.



Ruth A. Willingham · Clerk of the Court
FILED: ama