IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

————————

**CHRISTOPHER MATTHEW CLEMENTS,**
*Petitioner,*

*v.*

**THE HONORABLE DEBORAH BERNINI, JUDGE OF THE SUPERIOR COURT OF
THE STATE OF ARIZONA, IN AND FOR THE COUNTY OF PIMA,**
*Respondent Judge,*

**STATE OF ARIZONA,**
*Real Party in Interest*

No. CR-19-0140-PR
Filed September 9, 2020

————————

Appeal from the Superior Court in Pima County
The Honorable Deborah Bernini, Judge
No. CR20183978-001
**VACATED AND REMANDED**

Order of the Court of Appeals, Division Two
No. 2 CA-SA 2019-0013
Filed April 11, 2019

————————

COUNSEL:

Joseph P. DiRoberto, Tucson; Eric W. Kessler (argued), Kessler Law
Group, Scottsdale, Attorneys for Christopher Matthew Clements

Barbara LaWall, Pima County Attorney, Jacob R. Lines (argued), Deputy
County Attorney, Tucson, Attorneys for State of Arizona

————————

CHIEF JUSTICE BRUTINEL authored the opinion of the Court, in which VICE CHIEF JUSTICE TIMMER and JUSTICES BOLICK, GOULD, LOPEZ, BEENE and CHIEF JUDGE SWANN[*] joined.

————————

CHIEF JUSTICE BRUTINEL, opinion of the Court:

**¶1**        A party claiming the attorney-client privilege must make a prima facie showing supporting that claim.  Upon such a showing, the court may hold a hearing to determine whether the privilege applies.  But the court may not invade the privilege to determine its existence, even in camera using a special master.  Once the privilege has been established, a party attempting to set it aside under the crime-fraud exception must demonstrate "'a factual basis adequate to support a good faith belief by a reasonable person' that in camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." *United States v. Zolin*, 491 U.S. 554, 572 (1989) (internal citation omitted) (quoting *Caldwell v. Dist. Court*, 644 P.2d 26, 33 (Colo. 1982)) (emphasis omitted).  Only then may a special master review the privileged communications.

## I.  BACKGROUND

**¶2**        This case arises from a trial court's order appointing a special master to conduct an in camera review of recordings of jail phone calls.  The State requested the review in connection with its investigation of Christopher Clements, who was then incarcerated at the Maricopa County jail.

**¶3**        Inmates housed at the Maricopa County jail may place outgoing calls using an assigned pin number.  When a call is placed, a pre-recorded message first informs the inmate that the call is subject to monitoring and recording and advises against discussing legal matters.  To facilitate confidential attorney-client communications, the jail does not monitor or record calls placed to numbers listed with the State Bar of Arizona.  Here, numerous phone calls were placed from the jail to the home phone number of a criminal defense attorney, a number not listed with the State Bar.  This attorney previously represented Clements but was not his

_____

[*] Justice William G. Montgomery has recused himself from this case. Pursuant to article 6, section 3, of the Arizona Constitution, the Honorable Peter B. Swann, Chief Judge of the Arizona Court of Appeals, Division One, was designated to sit in this matter.

counsel of record when the phone calls were made. Nevertheless, the attorney informed the jail that he was still providing legal advice to Clements and publicly stated he might represent Clements in the future.

¶4 The State recognized that the recorded calls might be subject to the attorney-client privilege and requested that the court order a special master to review the recordings. Some of these calls were placed to the attorney from the jail using Clements's inmate pin number while others were placed using pin numbers belonging to different inmates. The State suspected that all the calls were initiated by Clements and, citing "other efforts to conceal evidence," stated it had concerns that the calls may not be privileged. Clements objected, asserting there was sufficient information to establish the calls were privileged and no information established the crime-fraud exception to attorney-client privilege.

¶5 The trial court appointed a special master to determine whether the calls were privileged. It justified the appointment on the basis that "the underlying facts as to [the] phone calls [were] in dispute," and that the attorney was not Clements's counsel of record.

¶6 Clements filed a special action in the court of appeals challenging the trial court's order. In briefing before the court of appeals, the State raised a new argument that Clements failed to establish the privilege by speaking on a recorded line. The court of appeals declined jurisdiction. Clements sought review in this Court, and we accepted jurisdiction to clarify the process and burden of establishing attorney-client privilege and litigating challenges to the privilege, both legal issues of statewide importance. We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution.

## II. DISCUSSION

¶7 The attorney-client privilege arises from a defendant's constitutional right to due process guaranteed by the Fourteenth Amendment to the United States Constitution and by article 2, section 4 of the Arizona Constitution, and from a criminal defendant's right to the assistance of counsel under the Sixth Amendment to the United States Constitution and article 2, section 24 of the Arizona Constitution. *See State v. Warner*, 150 Ariz. 123, 127 (1986) ("[I]f an accused is to derive the full benefits of his right to counsel, he must have the assurance of confidentiality and privacy of communication with his attorney."); *cf. State v. Melendez*, 172 Ariz. 68, 71 (1992) (finding it would violate a defendant's due process rights to permit testimony from his inmate representative even

without an attorney-client relationship). The privilege serves a critical function by encouraging a client to speak truthfully with his or her lawyer. A lawyer's ability to provide legal advice depends on this privilege because "[u]nless the lawyer knows the truth, he or she cannot be of much assistance to the client." *Samaritan Found. v. Goodfarb*, 176 Ariz. 497, 501 (1993). The privilege is codified at A.R.S. §§ 13-4062(2) (criminal actions) and 12-2234 (civil actions).

¶8        In a dispute over whether a communication is privileged, the party claiming the privilege has the burden of making a prima facie showing that the privilege applies to a specific communication. *See State ex. rel. Babbitt v. Arnold*, 26 Ariz. App. 333, 336 (1976). The proponent must show that 1) there is an attorney-client relationship, 2) the communication was made to secure or provide legal advice, 3) the communication was made in confidence, and 4) the communication was treated as confidential. *Samaritan Found.*, 176 Ariz. at 501. This remains true even in the unusual circumstance, present in this case, that the party claiming the privilege does not have possession of the recording of the allegedly privileged communications.

¶9        Each element of the privilege inquiry is fact specific. The existence of an attorney-client relationship is evaluated by a subjective test which examines "the nature of the work performed and . . . the circumstances under which the confidences were divulged." *Alexander v. Superior Court*, 141 Ariz. 157, 162 (1984) (quoting *Developments of the Law — Conflicts of Interest in the Legal Profession*, 94 Harv. L. Rev. 1244, 1321–22 (1981)). Looking at the circumstances of the communication, "the court must decide whether the party consulting the attorney believes that he or she is approaching the attorney in a professional capacity and with the intent of securing legal advice." *State v. Fodor*, 179 Ariz. 442, 448 (App. 1994). That is, the inquiry should examine a client's perception of the relationship and intent to secure legal advice. *Alexander*, 141 Ariz. at 162. Formal representation or status as counsel of record is not required.

¶10       The second element limits the privilege to communications seeking or providing legal advice. Not all communications made to or received from an attorney are protected. *See Samaritan Found.*, 176 Ariz. at 501–03. Instead, the privilege applies only to those communications involving legal advice. *Id.* Thus, the proponent must explain how the circumstances indicate the communication was made to secure or provide legal advice. *See Fodor*, 179 Ariz. at 448; *G & S Investments v. Belman*, 145 Ariz. 258, 265 (App. 1984) (explaining that privilege does not apply when

an attorney is consulted as a friend or business advisor). Although individual cases may vary, generally an attorney's representation to the court that a communication was made to secure or provide legal advice is entitled to substantial weight.

¶11 The third and fourth elements of the privilege reflect that only communications made in confidence and treated as confidential are protected. "[O]ne who knows that his conversation may be overheard and makes no effort to safeguard against interception may waive a claim of confidentiality." *State v. Moody*, 208 Ariz. 424, 448 ¶ 79 (2004). The court must ask "whether the client reasonably understood the [communication] to be confidential." *State v. Sucharew*, 205 Ariz. 16, 22 ¶ 11 (App. 2003) (quoting *Kevlik v. Goldstein*, 724 F.2d 844, 849 (1st Cir. 1984)). Permitting the communication to be overheard by individuals who are not a part of the confidential relationship usually destroys the confidentiality necessary for a privileged communication. *See id.*

¶12 Although these general principles apply to incarcerated defendants, *see Moody*, 208 Ariz. at 448 ¶ 79, we recognize that an incarcerated defendant's ability to confer with counsel is subject to jail policies. Therefore, a trial court may also consider these polices and their reasonableness in determining whether confidentiality has been waived.

¶13 For example, other courts have held that an incarcerated defendant who knowingly speaks with their attorney on a recorded phone line waives the requirement of confidentiality and thus, waives the privilege. *See United States v. Mejia*, 655 F.3d 126, 133 (2d Cir. 2011); *Bassett v. State*, 895 N.E.2d 1201, 1208 (Ind. 2008). *But see United States v. Walker*, No. 2:10cr186-MHT, 2011 WL 3349365, at *1 (M.D. Ala. July 14, 2011) (finding confidentiality in communications made over a recorded jail line where a prompt before the call began indicated attorney-client communications would not be recorded). We decline to adopt a bright-line approach here. Instead, when assessing the confidentiality of communications made on a recorded line, a trial court should consider the content of any recording warning, the reasonableness of any expectation of confidentiality, and whether the jail's recording policy presents an unreasonable or arbitrary restriction on a defendant's ability to communicate with his counsel. *See Johnson-El v. Schoemehl*, 878 F.2d 1043, 1052 (8th Cir. 1989) (finding restrictions on inmates' ability to telephone counsel inadequately justified); *Arpaio v. Baca*, 217 Ariz. 570, 579 ¶ 28 (App. 2008) ("[C]ourts have the inherent authority and obligation to provide relief to defendants from jail regulations or decisions by prison administrators

that significantly interfere with or unreasonably burden the exercise of their Sixth Amendment right to access to counsel.").

¶14          We note that a jail's policy to designate specific phone numbers as non-monitored attorney lines should, within reason, accommodate the reality that many attorneys communicate with clients using a cell phone or second office line.  Knowingly monitoring attorney-client communications to prevent the privilege from attaching to those conversations simply because the phone number used by a defendant to contact his or her attorney is not listed with the State Bar appears to constitute an unreasonable burden on a defendant's ability to confer with counsel.  If an inmate has no practical way to communicate with counsel without interception, he can hardly be said to have waived the privilege by choice or inadvertence.

¶15          A trial court may also consider whether there have been any purposeful intrusions by the State into the confidential relationship between a defendant and his attorney that would violate a defendant's constitutional rights, such as opening privileged materials, surreptitious eavesdropping on privileged communications, or preventing a confidential conference between a defendant and his or her counsel.  *See Moody*, 208 Ariz. at 448–49 ¶¶ 76, 80; *Warner*, 150 Ariz. at 127; *State v. Pecard*, 196 Ariz. 371, 378 ¶ 32 (App. 1999).

¶16          Here, as the proponent of the privilege, the burden to make a prima facie showing of privilege lies with Clements.  Because the recordings in dispute are in possession of the State and have not been provided to him, Clements, through counsel, must be allowed to review the recorded phone calls to determine whether he can validly assert a privilege regarding individual calls.  But Clements does not have a claim of privilege in recordings in which he did not participate.  Thus, if defense counsel determines that Clements was not a party to an individual call, counsel must immediately terminate review of that call to avoid invading any privilege not involving Clements.  The trial court is in the best position to determine if Clements can make a prima facie showing of privilege.

¶17          When determining the existence of the privilege, the trial court may consider the State's argument that because Clements spoke on a recorded line, he failed to treat the communication as confidential and thus, failed to establish that element of the privilege.  At the same time, Clements may raise any arguments regarding unreasonable restrictions on his ability to confer with counsel or potential intrusions into the attorney-client

relationship by the State that would constitutionally prohibit the State's use of the phone calls even if it demonstrated Clements waived the privilege. *See Johnson-El*, 878 F.2d at 1052–53; *Moody*, 208 Ariz. at 448–49 ¶ 80.

**¶18** If the trial court determines that the privilege applies, the burden would shift to the State to demonstrate "'a factual basis adequate to support a good faith belief by a reasonable person' that in camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." *Zolin*, 491 U.S. at 572 (1989) (internal citation omitted) (quoting *Caldwell*, 644 P.2d at 33) (emphasis omitted). Here, however, the State has conceded that it cannot meet this burden. Thus, absent new evidence, if the court determines that the privilege applies, the State may not review the recordings between Clements and his attorney.

### III. CONCLUSION

**¶19** For the foregoing reasons, we vacate the order for in camera review by a special master and remand for proceedings consistent with this Opinion.