NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA ex rel. ALLISTER ADEL,
Maricopa County Attorney, *Petitioner*,

*v.*

THE HONORABLE JAY R. ADLEMAN, Judge of the SUPERIOR COURT
OF THE STATE OF ARIZONA, in and for the County of MARICOPA,
*Respondent Judge,*

SHAVONTE DESHAWN BEASLEY, *Real Party in Interest.*

No. 1 CA-SA 21-0028

FILED 03-25-2021

Petition for Special Action from the Superior Court in Maricopa County
No.  CR2012-008302
The Honorable Jay R. Adleman, Judge

**JURISDICTION ACCEPTED; RELIEF GRANTED IN PART AND
DENIED IN PART**

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Julie A. Done, John Schneider, Kirsten Valenzuela
*Counsel for Petitioner*

Michael S. Reeves, Phoenix
*Co-Counsel for Real Party in Interest*

Daniela De La Torre, Phoenix
*Co-Counsel for Real Party in Interest*

---

**MEMORANDUM DECISION**

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Brian Y. Furuya joined.

---

**T H U M M A**, Judge:

**¶1**         The Maricopa County Attorney's Office (the State) seeks special action review of a superior court order denying the State's "Motion to Determine Non-Privileged Status of Communications" and finding that text messages between Shavonte Deshawn Beasley and his paralegal and mitigation specialist are privileged. *See* Ariz. Rev. Stat. (A.R.S.) § 13-4062(A)(2). Accepting special action jurisdiction, this court affirms that portion of the court's finding that text messages sent after March 4, 2020 at 10:21 a.m. are privileged. For text messages sent before that date and time, this court remands for further proceedings to resolve the "fact specific" inquiries of whether the communications were made in confidence and treated as confidential applying the analysis set forth in *Clements v. Bernini*, 249 Ariz. 434, 440-41 ¶¶ 9–18 (2020).[1]

**FACTS AND PROCEDURAL HISTORY**

**¶2**         Beasley is awaiting trial on various felony charges, including first degree murder where the State is seeking the death penalty. Beasley was arrested in 2012 and has been in custody ever since. Beasley has asserted that he is not eligible for the death penalty based on intellectual disability, which the State disputes.

**¶3**         In late 2019, the Maricopa County Sheriff's Office (MCSO) started making Telmate-brand computer tablets available to individuals held in its jails. These tablets allowed detainees to (1) make phone calls; (2) participate in video visits and (3) send and receive text messages. Beasley began using a tablet for text messaging on about February 10, 2020. He exchanged text messages with his family, a use that is not at issue here. He

---

[1] Absent material revisions after the relevant date, statutes and rules cited refer to the current version unless otherwise indicated.

also exchanged text messages with mitigation specialist Anna Nelson and his defense paralegal Nicole Erich, members of his defense team.

¶4 On March 11, 2020, the State issued and served a criminal subpoena duces tecum on the MCSO seeking Beasley's text messages from January 1, 2020 to the present and specifying an April 1, 2020 return date. The subpoena noted "**The State is not seeking any legal correspondence with this subpoena**." The subpoena, however, did not list the names of Beasley's attorneys or other members of his defense team. The State did not serve Beasley with a copy of the subpoena when it was provided to the MCSO.

¶5 In response to the subpoena, the MCSO produced to the State all of Beasley's text messages, including those with his mitigation specialist Anna Nelson and his defense paralegal Nicole Erich. Although the precise date of the MCSO's production is unclear, the text messages produced to the State are from February 10, 2020 to April 10, 2020. After analyzing Beasley's text messages, the State disclosed them and the subpoena to Beasley in April and May 2020. The disclosure included hundreds of text messages with mitigation specialist Nelson and about 20 text messages with paralegal Erich.

¶6 On May 12, 2020, the State filed a "Motion to Determine Non-Privileged Status of Communications," claiming the text messages between Beasley and Nelson/Erich were not privileged. The State based this claim on two documents:

- MSCO Rules and Regulations for Inmate Addendum, Section 32, Effective 12/02/2019, stating: "All actions on a tablet are subject to review and/or approval by MCSO Staff and the tablet vendor. All non-legal phone calls, non-legal video visits, messages, and photos will be monitored by staff."

- Telmate Terms and Conditions, last updated 04/04/2017, which set forth terms of use for a Telmate tablet. Paragraph 3 (of 30) in this 12-page "clickwrap" user agreement states: "The only method of communication that offers the protection of privileged attorney-client communication at this time is telephone communications. Any and all other content or

3

> information shared, transmitted, or sent using any messaging or video visitation system or any other method, may be accessed, reviewed, searched, used, recorded, copied, viewed, listened to, displayed, or distributed by Telmate correctional facility staff, or agents of law enforcement. You hereby acknowledge your awareness of, understand, and consent to all such activity. Attorneys who wish to make privileged communications with their respective clients must first inquire and confirm their identity and client relationship with the facility staff before utilizing the Telmate system." This user agreement also limits Telmate's liability; mandates arbitration for any dispute; requires court disputes to be resolved in "state and federal courts located in San Francisco, California" and provides it is governed by Delaware law.

The State's motion also quoted some of Beasley's texts, claiming they supported its argument that Beasley and his defense team had no expectation of privacy and knew the texts were being monitored. The State's motion did not request an evidentiary hearing and did not ask the court to undertake a document-by-document review of the text messages.

¶7 Beasley then responded to the State's motion.[2] Beasley's response included an email to Beasley's mitigation specialist Nelson from MCSO Sergeant Jason House at 10:21 a.m. on March 4, 2020, stating that "For the purposes of mitigation, [Beasley's tablet] account has been marked professional, not recorded and free."

¶8 The State then replied in further support of its motion, again citing the MSCO Rules and Regulations for Inmate Addendum and the Telmate Terms and Conditions. Consistent with the State's motion, this reply asked the court to find Beasley's text "messages are not privileged in any way." Consistent with the State's motion, the reply did not request an

---

[2] Before responding, Beasley moved for a more definite statement, seeking an order that the State disclose the specific text messages it intended to use. After the State responded, the superior court noted the motion and response; presumably denied the motion and, in any event, the motion for a more definite statement is not part of this special action.

evidentiary hearing and did not ask the court to undertake a document-by-document review of the text messages.

¶9 The court then heard extended oral argument on the State's motion. After taking the matter under advisement, the court issued a nine-page minute entry denying the State's motion. The court noted Sergeant House's March 4, 2020 acknowledgment that for "the purpose of mitigation, this *account* has been marked professional, not recorded, and free." (Emphasis added.) In focusing on the "account" reference by Sergeant House, the court rejected the State's position, raised at oral argument, that text messages were not included in Sergeant House's directive and would be treated differently than other forms of legal communication. Along with setting forth the applicable law, the court found Ethical Rule 4.4 (specifying the appropriate process for an attorney receiving inadvertent production of documents or electronically stored information) "instructive" about the State's obligations upon receipt of the text messages. Ultimately, the court found Beasley's "tablet communications with Anna Nelson and Nicole Erich are privileged and confidential in accordance with Arizona law. *See* A.R.S. § 13-4062(2)" and that Beasley's conduct did not waive that privilege.

¶10 The State moved to reconsider, claiming various legal and factual errors and noting the Arizona Supreme Court's then-new decision in *Clements v. Bernini*, 249 Ariz. 434 (2020). Although the State's original motion did not request an evidentiary hearing, the State's motion to reconsider claimed the court "erred in denying the State's request for an evidentiary hearing" and requested an evidentiary hearing on the motion to reconsider. Although not requested in the State's original motion, the State's motion to reconsider stated the superior court "should make specific findings as each communication [text message] or group of communications necessitates," citing *Clements*.

¶11 After receiving a response from Beasley, the court denied the State's motion to reconsider, including its request for an evidentiary hearing. In doing so, the court found that *Clements* validated the original ruling and that Beasley "has met his burden of demonstrating the applicability of the attorney-client privilege." This special action followed.

**DISCUSSION**

**¶12**        Because special action jurisdiction is appropriate to determine the application of a privilege, *see, e.g.*, *Roman Catholic Diocese of Phoenix v. Superior Court*, 204 Ariz. 225, 227 ¶ 2 (App. 2003), this court accepts jurisdiction.

**¶13**        The State acknowledges that, to secure relief, it must show the superior court abused its discretion or exceeded its jurisdiction or legal authority in denying the State's motions. *Twin City Fire Ins. Co. v. Burke*, 204 Ariz. 251, 253 ¶ 10 (2003); Ariz. R.P. Spec. Act. 3. The State argues the court erred by incorrectly interpreting and applying the law on the attorney-client privilege.

**¶14**        The State argues the court erred in denying its motion by finding all text messages were privileged without undertaking a document-by-document review and without holding an evidentiary hearing. The State's "Motion to Determine Non-Privileged Status of Communications" did not request such a review or an evidentiary hearing. Although the State's motion to reconsider at least arguably did so, the State has not shown that expanding the relief sought for the first time in a motion to reconsider is proper or appropriate. *Cf.* Ariz. R. Crim. P. 16.1(d); *Brookover v. Roberts Enterprises, Inc.*, 215 Ariz. 52, 57 ¶ 17 n.2 (App. 2007) (noting in dicta that this court seldom considers new arguments or evidence presented for the first time to the superior court in a motion to reconsider). To the extent that the State claims the superior court erred in failing to undertake those requests, on this record, the State has shown no error.

**¶15**        Turning to the merits, Arizona's attorney-client privilege codified at A.R.S. § 13-4062(A)(2) arises from a criminal defendant's due process rights "guaranteed by the Fourteenth Amendment to the United States Constitution and by article 2, section 4 of the Arizona Constitution, and from a criminal defendant's right to the assistance of counsel under the Sixth Amendment to the United States Constitution and article 2, section 24 of the Arizona Constitution." *Clements*, 249 Ariz. at 439 ¶ 7 (citations omitted). When a privilege is disputed, the proponent must make a prima facie showing that the privilege applies. *Id.* at ¶ 8. That fact-specific inquiry looks at whether "1) there is an attorney-client relationship, 2) the communication was made to secure or provide legal advice, 3) the communication was made in confidence, and 4) the communication was treated as confidential." *Id.* at ¶ 9.

**¶16** The first *Clements* element is undisputed and the State, by failing to request a document-specific review in its original motion, failed to properly join the second element. "The third and fourth elements of the privilege reflect that only communications made in confidence and treated as confidential are protected." *Clements*, 249 Ariz. at 440 ¶ 11. As applied, this confidentiality determination turns on when the text messages were sent.

**¶17** As the superior court noted, MCSO Sergeant House at 10:21 a.m. on March 4, 2020 wrote that "For the purposes of mitigation, [Beasley's] account has been marked professional, not recorded and free." This representation by Beasley's jailer provided the assurances of confidentiality necessary to comply with the third and fourth elements in *Clements*. Although the State argues the superior court should have construed Sergeant House's email differently, it has shown no error by that court in reaching this conclusion. As a result, on this record, text messages sent on or after March 4, 2020 at 10:21 a.m. were sent following assurances of confidentiality by Beasley's jailers, meaning the third and fourth *Clements* elements have been satisfied.

**¶18** By contrast, for text messages that predate 10:21 a.m. on March 4, 2020, there were no such assurances of confidentiality. And the MCSO Rules and Regulations for Inmate Addendum and the Telmate Terms and Conditions could be read in various ways, including as providing that, in fact, the assurances were to the contrary. Thus, on the record provided, that portion of the superior court's order finding text messages sent before 10:21 a.m. on March 4, 2020 were privileged is vacated. As a result, additional proceedings before the superior court are necessary to determine whether text messages sent before 10:21 a.m. on March 4, 2020 are privileged.

**¶19** This court leaves to the superior court the appropriate procedure to address the substantive issue of whether elements 3 and 4 of the *Clements* analysis have been met as to the pre-10:23 a.m. on March 4, 2020 text messages. *See Clements*, 249 Ariz. at 441-42 ¶¶ 13-18 ("declin[ing] to adopt a bright-line approach," instead identifying factors for a trial court to consider in addressing the issue).

## CONCLUSION

**¶20**　　　Accepting special action jurisdiction, this Court denies relief for that portion of the superior court's order finding the text messages sent on or after March 4, 2020 at 10:21 a.m. are privileged. For text messages that precede that date and time, the matter is remanded to the superior court for further proceedings consistent with this decision.



AMY M. WOOD • Clerk of the Court
FILED:　　HB