IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

---

**STATE OF ARIZONA EX REL. ALLISTER ADEL, MARICOPA COUNTY ATTORNEY,**
*Petitioner,*

*v.*

**HON. JAY R. ADLEMAN, JUDGE OF THE SUPERIOR COURT OF THE STATE OF ARIZONA, IN AND FOR THE COUNTY OF MARICOPA,**
*Respondent Judge,*

**SHAVONTE DESHAWN BEASLEY,**
*Real Party in Interest.*

---

No. CR-21-0157-PR
Filed February 9, 2022

---

Special Action from the Superior Court in Maricopa County
The Honorable Jay R. Adleman, Judge
No. CR2012-008302
**VACATED**

Memorandum Decision of the Court of Appeals, Division One
No. 1 CA-SA 21-0028
Filed March 25, 2021
**REVERSED AND REMANDED**

---

COUNSEL:

Allister Adel, Maricopa County Attorney, Julie A. Done (argued), John Schneider, Kirsten Valenzuela, Deputy County Attorneys, Phoenix, Attorneys for State of Arizona and Allister Adel

Daniela De La Torre, De La Torre Law Office, PLC, Phoenix; and Michael S. Reeves (argued), Michael S. Reeves, Attorney at Law, Phoenix, Attorneys for Shavonte Deshawn Beasley

David J. Euchner, Pima County Public Defender's Office, Tucson; and Emily Skinner, Arizona Capital Representation Project, Phoenix, Attorneys for Amici Curiae Arizona Attorneys for Criminal Justice and Arizona Capital Representation Project

———————————

JUSTICE LOPEZ authored the opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER, and JUSTICES BOLICK, BEENE, KING, and PELANDER (RETIRED) joined.[*]

———————————

JUSTICE LOPEZ, opinion of the Court:

¶1 We consider whether a defendant in a criminal case who asserts the attorney-client privilege must make a prima facie showing that each communication is privileged or can rely on a blanket application of the privilege. Here, because the defendant failed to make an adequate showing, we remand to the trial court with instructions to redetermine the existence of the privilege, if any, for the disputed communications following the principles in *Clements v. Bernini ex rel. County of Pima*, 249 Ariz. 434 (2020).

## BACKGROUND

¶2 Since 2019, inmates at Maricopa County Sheriff's Office ("MCSO") jails have had access to jail-provided computer tablets to send text messages and make phone and video calls. Inmate Rules and Regulations regarding tablet usage were posted at the jail before MCSO issued the tablets and informed inmates that the only method of unmonitored communication was the jail's designated legal telephone. To use the messaging system, every inmate and message recipient must acknowledge that non-legal communications are monitored and not privileged.

¶3 Shavonte Deshawn Beasley is in jail awaiting trial on various felony charges, including first degree murder. The State originally noticed its intent to seek the death penalty against Beasley but later withdrew its

———————————

[*] Justice Montgomery is recused from this case. Pursuant to article 6, section 3 of the Arizona Constitution, Justice John Pelander (Ret.), of the Arizona Supreme Court was designated to sit in this matter.

notice on October 1, 2021. On approximately February 10, 2020, Beasley began using an MCSO-issued Telmate tablet to communicate with family, friends, and members of his defense team.

¶4　　　　On February 12, 2020, Merri Plummer, an administrator at the Office of Contract Counsel, emailed all contract defense attorneys to reiterate that text messaging via the tablets was not privileged. The email also explained that the new application, expected to be available in March, would allow attorneys to conduct privileged video visits from their cell phones. On February 28, Plummer emailed all defense attorneys and mitigation specialists informing them that beginning March 1 the "GettingOut" application would allow video and phone visits with "non-monitored, non-recorded privileges," but she emphasized that the privileges did not apply to texts. Defense team members were instructed not to use their GettingOut account until they submitted photos of their driver licenses and received written confirmation that their account had been flagged as privileged.

¶5　　　　On March 4, after receiving Plummer's emails, Beasley's mitigation specialist, Anna Nelson, sent MCSO Sergeant Jason House an email with the subject line "Visitation – Legal," in which she attached a photo of her driver license and identified herself as a contract mitigation specialist. Sergeant House responded that "[f]or purposes of mitigation, this account has been marked professional, not recorded, and free."

¶6　　　　On March 11, the State issued and served a criminal subpoena duces tecum on MCSO requesting Beasley's texts since January 1, 2020 to dispute his claimed intellectual disability, which would render him ineligible for the death penalty. The subpoena, which was served on neither Beasley nor his defense team, noted that "[t]he State is not seeking any legal correspondence." MCSO released all of Beasley's texts to the State, including hundreds with Nelson and approximately twenty with the defense team's paralegal, Nicole Erich. Upon analyzing Beasley's texts, the State furnished them and the subpoena to Beasley's defense team in several disclosures in April and May 2020.

¶7　　　　The State subsequently filed a Motion to Determine Non-Privileged Status of Communications with the trial court, arguing the texts with the defense team were not privileged based on the MCSO Rules and Regulations and the Telmate Terms and Conditions. Beasley countered that all his communications obtained via subpoena were privileged, citing six specific texts and Nelson's March 4 email exchange with Sergeant House.

The State moved for an evidentiary hearing, but the court ruled based on the extant record that all of Beasley's communications with Nelson and Erich were confidential, privileged, and non-discoverable because (1) the defense made reasonable efforts to secure private and confidential communications with Beasley; (2) Beasley subjectively believed the communications were privileged; and (3) the State did not establish that Beasley waived the attorney-client privilege.

¶8        The State unsuccessfully moved for reconsideration after we issued our decision in *Clements* and then sought special action relief. The court of appeals determined that, because the March 4 email exchange between Sergeant House and Nelson provided assurances of confidentiality, texts sent after March 4 were privileged. *State ex rel. Adel v. Adleman*, No. 1 CA-SA 21-0028, 2021 WL 1137258, at *1 ¶ 1 (Ariz. App. Mar. 25, 2021) (mem. decision). However, the court remanded the case to the trial court to resolve the "fact specific" inquiries of whether the communications made before March 4 were also made in confidence and treated as confidential. *Id.*

¶9        We granted review to consider the application of the attorney-client privilege when a communication purportedly is inadvertently disclosed, a recurring issue of statewide importance. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

### I.

¶10        We review rulings on discovery issues for an abuse of discretion. *Twin City Fire Ins. v. Burke*, 204 Ariz. 251, 253–54 ¶ 10 (2003). We defer to the trial court's factual findings provided they are "supported by reasonable evidence." *Id.* at 254 ¶ 10. However, a trial court's legal error may be an abuse of discretion. *Id.* Whether the attorney-client privilege exists is a question of law, which we review de novo. *Id.* Similarly, "[w]hether a party has waived the attorney-client privilege is a mixed question of law and fact which we review de novo." *Id.* (alteration in original) (quoting *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995)).

**A.**

**¶11** The attorney-client privilege derives from a criminal defendant's constitutional right to due process enshrined in the Fourteenth Amendment to the United States Constitution and article 2, section 4 of the Arizona Constitution, and from an accused's right to the assistance of counsel under the Sixth Amendment to the United States Constitution and article 2, section 24 of the Arizona Constitution. *See State v. Warner*, 150 Ariz. 123, 127 (1986). The privilege serves the essential function of facilitating a client's candid communication with counsel because "[u]nless the lawyer knows the truth, he or she cannot be of much assistance to the client." *Clements*, 249 Ariz. at 439 ¶ 7 (alteration in original) (quoting *Samaritan Found. v. Goodfarb*, 176 Ariz. 497, 501 (1993)); *Warner*, 150 Ariz. at 127 ("[I]f an accused is to derive the full benefits of his right to counsel, he must have the assurance of confidentiality and privacy of communication with his attorney."). The attorney-client privilege, as pertinent here, is codified at A.R.S. § 13-4062(2) (criminal actions).

**¶12** The protections associated with the attorney-client and work product privileges generally extend to communications between the client and counsel's paralegal or investigative staff. *See, e.g.*, Ariz. R. Crim. P. 15.4(b)(1); *Upjohn Co. v. United States*, 449 U.S. 383, 397–98 (noting that work product privilege generally prohibits discovery of written statements, private memoranda, and personal recollections prepared or formed by counsel in the course of legal representation (quoting *Hickman v. Taylor*, 329 U.S. 495, 510 (1947))). Absent a client's consent, an attorney may not divulge communications with a client made in the course of legal representation. § 13-4062(2); *Samaritan Found.*, 176 Ariz. at 501.

**¶13** In a dispute over the existence or scope of the attorney-client privilege, the party claiming the privilege must make a prima facie showing that it applies to each contested communication. *Clements*, 249 Ariz. at 439–40 ¶ 8; *see State ex rel. Babbitt v. Arnold*, 26 Ariz. App. 333, 336 (1976). The proponent of the privilege must show that: "1) there is an attorney-client relationship, 2) the communication was made to secure or provide legal advice, 3) the communication was made in confidence, and 4) the communication was treated as confidential." *Clements*, 249 Ariz. at 440 ¶ 8.

**¶14** In *Clements*, we held that the inmate-proponent must assert the privilege for each "individual call[]," not merely one blanket privilege assertion for all calls with his attorney. *Id.* at 441 ¶ 16; *see also Alexander v. Superior Court*, 141 Ariz. 157, 163 (1984) ("If the client himself does not treat

the *particular* communication as privileged, *that communication* will not be recognized as a confidence by this court." (emphasis added)).  Although the proponent must establish a prima facie case for each communication, privilege may be established by grouping communications if circumstances demonstrate they share a common nature and purpose.  For example, a defendant may use a privilege log to identify each communication by date, time, and participants, and then introduce evidence that all the communications occurred in the course of an attorney-client relationship, were made for the purpose of seeking legal advice in confidence, and were treated as confidential.  *See, e.g.*, Ariz. R. Civ. P. 26(b)(6) (for civil privilege logs); Ariz. R. Crim. P. 15.5(e) (concerning criminal pretrial procedures and document disclosures requiring clear identification of, and legal basis for, document redactions).  Thus, we decline to articulate a rule requiring courts to scrutinize each communication, line-by-line, where the privilege may be established for a class of communications based on appropriate circumstances.

¶15        Upon a prima facie showing of privilege, the party contesting the privilege must demonstrate a good faith basis that an in camera review of the communications would reveal waiver of the privilege or establish an applicable exception.  *Clements*, 249 Ariz. at 438 ¶ 1 (quoting *United States v. Zolin*, 491 U.S. 554, 572 (1989)).  For example, the prosecutor could show circumstances suggesting that a defendant waived the attorney-client privilege by communicating with counsel knowing the conversation may be overheard or monitored and made no efforts to safeguard against such intrusion.  *See State v. Moody*, 208 Ariz. 424, 448 ¶ 79 (2004).  Or the prosecutor could present circumstances suggesting application of the crime-fraud exception, which permits breach of the privilege to prevent clients from abusing the privilege by concealing communications made to facilitate crime or fraud.  *See Zolin*, 491 U.S. at 563, 572 ("Before engaging in *in camera* review to determine the applicability of the crime-fraud exception, the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person, that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." (internal citation omitted) (quoting *Caldwell v. District Court*, 644 P.2d 26, 33 (Colo. 1982))); *see also* Ariz. R. Sup. Ct. 42, Ethical Rule ("ER") 1.6; Restatement (Third) of the Law Governing Lawyers § 82 (Am. L. Inst. 2000).

**B.**

**¶16**    On the limited record before us, we conclude Beasley failed to satisfy his burden of establishing a prima facie case for the existence of the attorney-client privilege for the seized texts, and the trial court misallocated the burden of proof to the State.

**¶17**    In support of his claim of privilege, Beasley produced three exhibits: (1) the March 4 email between Sergeant House and Nelson; (2) a forwarded email from Plummer concerning the sign-up instructions for the tablet video visitation system; and (3) a one-page journal article about general discovery violations.  There is no dispute that the attorney-client privilege extends to members of Beasley's defense team, including Nelson and Erich.  Indeed, the parties agree that Beasley satisfied the first *Clements* element—the existence of the attorney-client relationship.  But to establish privilege, he must satisfy the remaining three *Clements* elements—that the communications were made to secure or provide legal advice, in confidence, and were treated as confidential.  *Clements*, 249 Ariz. at 439–40 ¶ 8.

**¶18**    Beasley argues that all his communications were privileged because, as the trial court determined, he manifested an intent to establish a "legal" account on the tablets on which he texted members of his defense team, and his counsel avowed that the contested communications were made in the course of legal representation.  Evidence of Beasley's intent is certainly germane to the second *Clements* element—the communication was made to secure or provide legal advice—but communications to or from an attorney are not categorically protected.  *See id.* at 440 ¶ 10; *Samaritan Found.*, 176 Ariz. at 501–03.  The privilege applies only to those communications made to secure or provide legal advice, and Beasley has the burden to demonstrate that the circumstances bolster his claim that the texts were created for that purpose.  *Clements*, 249 Ariz. at 440 ¶ 10; *see State v. Fodor*, 179 Ariz. 442, 448 (App. 1994).  And, as we noted in *Clements*, although "an attorney's representation to the court that a communication was made to secure or provide legal advice is entitled to substantial weight," we also clarified that such an avowal is not dispositive, and the inquiry into privilege is fact specific. 249 Ariz. at 440 ¶ 10.  On this record, Beasley's and his counsel's bare assertions of privilege fall short of establishing the second *Clements* element.

**¶19**    Beasley also fails to adequately address whether, in light of the MCSO warnings about the non-privileged nature of its tablet text

messaging, he has satisfied the third and fourth *Clements* elements—that his texts were made in confidence and were treated as confidential. On this record, further inquiry is necessary to determine whether Beasley "reasonably understood" that the texts were sent in confidence and were treated as confidential, even though his use of the tablet for texting was expressly conditioned on his recognition that the communications were monitored and not privileged. *Id.* ¶ 11 ("The court must ask 'whether the client reasonably understood the [communication] to be confidential.'" (quoting *State v. Sucharew*, 205 Ariz. 16, 22 ¶ 11 (App. 2003))).

**¶20** Our privilege analysis here is complicated by the procedural missteps culminating in the State's premature review of, defense counsel's use of, and the trial court's improper consideration of the texts' content. The State procured Beasley's texts via subpoena and, after failing to recognize some of the texts were potentially privileged, reviewed them before disclosing them to the defense and seeking court review. As a reminder, once the state questions the privileged nature of communications it obtains, it must cease its review, immediately disclose them to the defense, and enlist court guidance. *Cf. Lund v. Myers*, 232 Ariz. 309, 311–12 ¶¶ 12–13 (2013) (noting that a party in receipt of allegedly privileged documents must suspend use of such documents, immediately notify the alleged privilege holder, and present the information to the trial court to resolve the privilege dispute).

**¶21** The parties did not have the benefit of our guidance in *Clements* when the trial court originally considered the privilege claim. However, once the State moved for reconsideration after *Clements*, the trial court should have required Beasley to make a prima facie case of privilege for the contested texts by applying the four *Clements* elements, based on "the *circumstances* of the communication[s]," rather than the content of the texts. *Clements*, 249 Ariz. at 440 ¶ 9 (emphasis added). Upon Beasley's carrying his burden, the State could have contested privilege by proving waiver or demonstrating a good faith basis for an exception. However, as the State acknowledges, a prosecutor must have a good faith basis for concluding the privilege is inapplicable before subpoenaing records reflecting attorney-client communications. The state has no right to subpoena such records in a fishing expedition.[1] *See Zolin*, 491 U.S. at 571 (stating "[t]here is no reason to permit opponents of the privilege to engage in groundless fishing expeditions"). Notably, the State concedes it does not

---

[1] We declined review of, and do not consider here, whether the State violated its ethical duties under ER 4.4.

have a factual basis to breach the privilege under the crime-fraud exception, and its only claim is that Beasley waived the privilege.

¶22    Because the State erroneously reviewed the texts, defense counsel referenced their content, and the trial court considered such content before determining privilege in violation of the *Clements* procedures, the parties must relitigate the privileged nature of the texts based on the circumstances of the communications rather than the content of the texts. We remand to the trial court to determine—pursuant to *Clements* and our reasoning here—whether Beasley's communications with his defense team were protected by the attorney-client privilege. We defer to the trial court to determine whether an evidentiary hearing is necessary.

## II.

¶23    At oral argument, defense counsel intimated that inmates at MCSO jails were denied access to the designated legal phone to contact counsel for privileged communications at the inception of the COVID-19 pandemic. Unique considerations arise in safeguarding an incarcerated defendant's constitutional right to counsel. Although an inmate's ability to confer with counsel is necessarily subject to jail policies, which the court may consider when determining if confidentiality has been waived, a jail may not impermissibly restrict a defendant's right to counsel. *Clements*, 249 Ariz. at 440 ¶ 12. When assessing the confidentiality of monitored communications, the trial court should consider (1) the content of any warning to the inmates; (2) the reasonableness of an inmate's expectation of confidentiality; and (3) whether the jail's monitoring policy "presents an unreasonable or arbitrary restriction on a defendant's ability to communicate with his counsel." *Id.* at 440–41 ¶ 13; *see also Arpaio v. Baca*, 217 Ariz. 570, 579 ¶ 28 (App. 2008) ("[C]ourts have the inherent authority and obligation to provide relief to defendants from jail regulations . . . that significantly interfere with or unreasonably burden the exercise of their Sixth Amendment right to . . . counsel."). Thus, "[i]f an inmate has no practical way to communicate with counsel without interception, he can hardly be said to have waived the privilege by choice or inadvertence." *Clements*, 249 Ariz. at 441 ¶ 14.

¶24    Defense counsel's contention at oral argument is the first mention of any such restriction and there is no evidence in the record before us that COVID-19-inspired policies restricted inmates' communication with counsel solely to the non-privileged tablet text messaging. Here, an

unlawful interference with the attorney-client relationship is manifest if the MCSO jail's policies, or other circumstances like a global pandemic, effectively restricted inmates' communication with counsel to merely non-privileged tablet text messaging. In this event, Beasley could not have waived his attorney-client privilege, and the State would not be entitled to discover any of the texts, absent establishing an exception to the privilege. *Id.*

¶25 On remand, we urge the trial court to make a finding concerning the inmates' access to the legal phone or other methods of privileged communication during the pandemic to ensure that jail policies did not impermissibly interfere with Beasley's ability to confidentially communicate with counsel in light of *Clements*.

## CONCLUSION

¶26 We vacate the trial court's ruling that all of Beasley's texts with his defense team are privileged, reverse the court of appeals' decision, and remand to the trial court to redetermine the existence of the attorney-client privilege for the disputed texts consistent with this opinion and *Clements*.

¶27 We defer to the trial court on remand to consider, if necessary, whether in light of the State's withdrawal of its notice to seek the death penalty—which obviated the State's stated justification for its procurement via subpoena of Beasley's texts to refute his claimed intellectual disability—the privilege issue is moot.