NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

SHANNON BERKMAN, *Plaintiff/Appellant*,

*v.*

WALT DANLEY REALTY, LLC, et al., *Defendants/Appellees*.

No. 1 CA-CV 22-0584
FILED 8-08-2023

Appeal from the Superior Court in Maricopa County
No. CV2018-010817
The Honorable John R. Hannah, Judge

**AFFIRMED**

COUNSEL

Shannon Berkman, Phoenix
*Plaintiff/Appellant/Counter-Defendant*

Don Bivens, PLLC, Scottsdale
By Don Bivens
*Co-Counsel for Defendants/Appellees/Counter-Claimant*

Snell & Wilmer, LLP, Phoenix
By Joshua R. Woodard, Patrick A. Tighe
*Co-Counsel for Defendants/Appellees/Counter-Claimant*

### MEMORANDUM DECISION

Judge Cynthia J. Bailey delivered the decision of the Court, in which Presiding Judge James B. Morse Jr. and Judge Brian Y. Furuya joined.

---

**B A I L E Y**, Judge:

**¶1**    Shannon Berkman appeals the superior court's judgment for her former employer Walt Danley Realty, LLC ("WDR") and its executives Douglas Dellis and Walt Danley (collectively, "Defendants") on her wrongful termination claim and the court's judgment for Danley on his invasion of privacy counter-claim against Berkman. Because Berkman has shown no error, we affirm.

### FACTS AND PROCEDURAL HISTORY

**¶2**    We view the facts in the light most favorable to sustaining the court's verdicts. *Bennett v. Baxter Grp., Inc.*, 223 Ariz. 414, 417, ¶ 2 (App. 2010).

**¶3**    WDR is an Arizona real estate company specializing in luxury homes. In September 2016, WDR hired Berkman as a real estate agent. Several months later, Berkman began working as an assistant to Danley, the president and co-owner of WDR. In early 2018, issues with Berkman's performance arose. In February 2018, Danley told Berkman that they had a "communication problem," she was not fulfilling her role as his assistant, and she focused only on real estate transactions on which she could earn commissions. The next month, Danley again told Berkman that her performance was "unprofessional" and that she was not directing enough attention to her role as his assistant, and he requested that she take three days off to think about her role at WDR. Then, in April, a WDR client emailed Danley, complaining that Berkman had acted unprofessionally during the sale of her home, causing her to lose valuable furniture.

**¶4**    On May 9, 2018, Danley instructed WDR chief operating officer Dellis to fire Berkman. Dellis was about to leave on a scheduled vacation and requested that he be allowed to do so once he returned. Danley agreed. When Dellis returned on May 21, Danley told Dellis not to fire Berkman immediately because he "had a few loose ends to tie up before we let her go." About a week later, Danley gave Dellis the green light to fire Berkman, but she was on a scheduled vacation. Dellis decided to wait

until Berkman returned from vacation so that he could fire her in a face-to-face meeting. Dellis tried to set up a meeting with Berkman once she returned on June 7, but she maintained she was unavailable because she was caring for her son, who had been in an accident, attending a friend's funeral, and helping that friend's family.

¶5 Then, on June 13, Danley instructed Dellis to fire Berkman that day, even if he could not meet with her personally. Three events led Danley to conclude Berkman had to be fired immediately. First, a WDR client called to complain about confusion surrounding the sale of her house and that she had not been informed of significant dates. Berkman, though not the listing agent, had been heavily involved in the transaction and was responsible for communicating with the client. Second, Danley reviewed a negative survey response from a client about a transaction Berkman worked on. Third, Danley grew suspicious that, during a negotiation where WDR represented the seller of a home, Berkman revealed the "bottom line" price of WDR's client—a breach of WDR's fiduciary duties.

¶6 Based on Danley's instruction, Dellis fired Berkman via email on June 13. Several months later, Berkman filed suit against WDR, Danley, and Dellis for wrongful termination. She alleged that she was fired in retaliation for reporting conduct by Dellis and Danley that she believed was unlawful. Specifically, she alleged that on May 23, 2018, she disclosed to Danley that she believed Dellis was selling "leads" (information about potential buyers WDR could represent or sell one of its listings to) that WDR paid to get from Zillow.com to a WDR agent in exchange for "illegal kickbacks." She also alleged that on June 6, 2018, she reported to WDR's designated broker that Danley had required her to give him an "illegal kickback" of $4,000 out of one of her commission checks almost a year earlier.

¶7 Before suing, Berkman sent a demand letter to Defendants laying out her potential claims and requesting a settlement. Attached to the demand letter was one of Danley's private journal entries. Realizing Berkman had stolen his private materials and shared them with others, Danley counter-claimed against Berkman for invasion of privacy, alleging that her actions caused him significant emotional distress.

¶8 In 2021, after a seven-day bench trial, the superior court found for Defendants on Berkman's wrongful termination claim and for Danley on his invasion of privacy counter-claim, and entered a final judgment accordingly. Berkman timely appealed, and we have jurisdiction under Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1).

**DISCUSSION**

## I. Standard of Review

**¶9** Following a bench trial, we review the superior court's legal conclusions *de novo* but defer to its findings of fact unless clearly erroneous. *Town of Marana v. Pima Cnty.*, 230 Ariz. 142, 152, ¶ 46 (App. 2012). A factual finding is not clearly erroneous so long as it is supported by substantial evidence. *Castro v. Ballesteros-Suarez*, 222 Ariz. 48, 51–52, ¶ 11 (App. 2009) (citation omitted). "Evidence is substantial if it allows 'a reasonable person to reach the trial court's result.'" *Id.* at 52, ¶ 11 (quoting *Davis v. Zlatos*, 211 Ariz. 519, 524, ¶ 18 (App. 2005)). "We will not reweigh the evidence or substitute our evaluation of the facts." *Id.* (citing *Cauble v. Osselaer*, 150 Ariz. 256, 258 (App. 1986)).

**¶10** When reviewing evidentiary and discovery-related challenges, we will not disturb the court's ruling absent an abuse of discretion. *See Marquez v. Ortega*, 231 Ariz. 437, 441, ¶ 14 (App. 2013). A court abuses its discretion if the record lacks competent evidence to support its decision or the court commits an error of law in reaching its decision. *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 19 (App. 2009) (citations omitted). We review *de novo* whether attorney-client privilege protects a communication and whether a party has waived the privilege. *State ex rel. Adel v. Adleman*, 252 Ariz. 356, 360, ¶ 10 (2022).

## II. Wrongful Termination Claim

**¶11** Berkman alleged that she was wrongfully terminated in retaliation for reporting what she believed to be unlawful conduct by Danley and Dellis. To prevail on her claim, Berkman had to prove (1) that she was an employee, (2) that she had "a reasonable belief that [her] employer, or an employee of the employer, has violated, is violating or will violate" Arizona law, (3) she disclosed her belief "in a reasonable manner" to a person she "reasonably believe[d] [wa]s in a managerial or supervisory position," and (4) she was fired "in retaliation for" her disclosure. A.R.S. § 23-1501(A)(3)(c)(ii).

**¶12** Berkman argues that substantial evidence does not support the verdict for Defendants under the *McDonnell Douglas* burden-shifting framework.[1] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04

---

[1] To the extent that Berkman relies on deposition testimony not admitted at trial to support her claim, we do not consider this evidence. *See*

(1973). As Defendants point out, no published opinion in Arizona has adopted the *McDonnell Douglas* burden-shifting framework for wrongful termination claims under A.R.S. § 23-1501. But unpublished memorandum decisions from this court have concluded the *McDonnell Douglas* standard applies to claims under A.R.S. § 23-1501(A)(3)(c)(ii). *See Baron v. HonorHealth*, 1 CA-CV 19-0391, 2020 WL 5638539, at *2, ¶ 13 (Ariz. App. Sept. 22, 2020) (mem. decision); *Czarny v. Hyatt Residential Mktg. Corp.*, 1 CA-CV 16-0577, 2018 WL 1190051, at *2, ¶¶ 12–13 (Ariz. App. Mar. 8, 2018) (mem. decision). Much like those decisions, we apply *McDonnell Douglas* here.

**¶13** In *McDonnell Douglas*, the United States Supreme Court held that under federal civil rights law, an employee bears the burden of making a prima facie case of discrimination on the basis of race. 411 U.S. at 802. Then, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for terminating the employee's job. *Id.* Once the employer does so, the burden shifts back to the employee to prove the offered reason is pretextual. *Id.* at 804.

**¶14** Berkman testified that she reported misconduct by Dellis on May 23, 2018, and misconduct by Danley on May 31, 2018. Both Dellis and Danley testified that Danley instructed Dellis to fire Berkman for her poor work performance on May 9, 2018, well before she reported any allegedly unlawful conduct. And a WDR real estate agent testified that by May 21, 2018, she knew that Danley had ordered Berkman to be fired. Additionally, on May 17, 2018, Dellis texted WDR's chief financial officer, confirming that he was to fire Berkman when he returned from vacation. Danley and Dellis both testified that on May 21, Danley requested Dellis delay firing Berkman until Danley had tied up some "loose ends." But Danley was clear that from May 9 on, he never changed his mind about firing Berkman. Substantial evidence shows that Danley decided to fire Berkman before she reported any misconduct, and that this decision was not a pretext for firing her in retaliation for her disclosure.

**¶15** Berkman points to conflicts in the evidence that she claims show Defendants' stated reason for her firing and their account of the timing of the decision were pretextual. But we must defer to the superior court's resolution of evidentiary conflicts. *See In re Estate of Newman*, 219 Ariz. 260, 271, ¶ 40 (App. 2008). Berkman also argues that Defendants

---

*Gersten v. Gersten*, 223 Ariz. 99, 103, ¶ 10 (App. 2009) ("[P]ortions of the record not admitted in evidence at trial ha[ve] no evidentiary value unless they [a]re the proper subject of judicial notice." (citations omitted)).

changed their story at trial to support a theory that the decision to fire her was made before her disclosures. But throughout the litigation, Defendants maintained that Danley instructed Dellis to fire Berkman on May 9 for her poor performance, and that the decision was never reversed, just delayed. Because the court's verdict is supported by substantial evidence, we will not disturb it. *See Creamer v. Troiano*, 108 Ariz. 573, 577 (1972).

### III.  Invasion of Privacy Counter-claim

**¶16**  Berkman also argues that substantial evidence does not support the court's verdict for Danley on his invasion of privacy counter-claim. To prevail, Danley had to prove (1) that Berkman "intentionally intrude[d], physically or otherwise, upon the solitude or seclusion of [Danley] or his private affairs or concerns," and (2) the intrusion was "highly offensive to a reasonable person." *Hart v. Seven Resorts Inc.*, 190 Ariz. 272, 279 (App. 1997) (quoting Restatement (Second) of Torts § 652B (1977)). Danley did not have to prove financial or reputational damages; he could recover for "the mental anguish and distress caused by" the invasion of his privacy. *Reed v. Real Detective Pub. Co.*, 63 Ariz. 294, 305–06 (1945).

**¶17**  At trial, Danley introduced his journal entry that Berkman attached to the demand letter she sent Defendants. He also introduced 143 journal pages and other personal documents that Berkman produced during discovery. Danley testified that he kept these documents in a desk drawer at his home office. He testified that he did not share his private journaling with anyone, and he did not allow Berkman to access the office drawer where they were kept. He also testified that he could not have mistakenly turned over his journals to Berkman when moving from his home office to his work office. Berkman maintains that Danley had no reasonable expectation of privacy in his home office drawer, because he required Berkman to work with him in his home office. But Danley never allowed Berkman to access his journals, and he intentionally kept them private from everyone, including Berkman. Danley therefore maintained a privacy interest in his journals. And taking and distributing another's private thoughts and reflections is the kind of privacy intrusion that is "highly offensive to a reasonable person." *Hurt*, 190 Ariz. at 279. Danley also testified about the significant emotional distress he experienced because of Berkman's invasion of his privacy. Substantial evidence thus supports the court's verdict.

**¶18**  Berkman next contends that the court improperly considered the journal entries and documents that were not attached to the demand letter but later produced in discovery. She contends that because Danley

did not amend his counter-claim to reference these documents, they could not be used to support his counter-claim. But Danley never limited his counter-claim to Berkman's taking of the journal entry attached to the demand letter. He alleged that Berkman invaded his privacy by "intentionally interfer[ing] with [his] privacy when she read, stole and/or copied, then revealed his private notes to other people." This allegation was broad enough to encompass the later-discovered documents. That more evidence emerged to support his allegation through discovery did not require him to amend his counterclaim. *See Pruitt v. Pavelin*, 141 Ariz. 195, 205–06 (App. 1984).

**¶19** Finally, Berkman argues that the court improperly considered the journal entry attached to Berkman's demand letter because the letter was protected by attorney-client privilege and Arizona Rule of Evidence ("Rule") 408.[2]

**¶20** To establish a communication is privileged, the party claiming the privilege must show (1) "an attorney-client relationship," (2) that "the communication was made to secure or provide legal advice," (3) that "the communication was made in confidence," and (4) that "the communication was treated as confidential." *Clements v. Bernini*, 249 Ariz. 434, 440, ¶ 8 (2020) (citation omitted). Berkman cannot meet this standard, as she did not treat the demand letter and attached journal entry as confidential because she sent it to Defendants to try to resolve her claim.

**¶21** Rule 408 prohibits the admission of any offer, acceptance, or negotiation of settlement, including any "conduct or a statement made during compromise negotiations" for impeachment or "to prove or disprove the validity or amount of a disputed claim." Ariz. R. Evid. 408(a). But Rule 408 provides that "[t]he court may admit this evidence for another purpose." Ariz. R. Evid. 408(b). Danley did not admit the demand letter and attachment to impeach Berkman or to prove the validity or amount of any claim. The letter and attachment were admitted as substantive proof of Danley's claim against Berkman for invasion of privacy. Rule 408 thus did not bar their admission.

---

[2]    In her reply brief, Berkman also argues Danley had no privacy interest in this journal entry because it contained information about Berkman's work performance, and therefore Danley would have needed to disclose it in discovery on her wrongful termination claim. Berkman waived this argument by failing to raise it in her opening brief. *See State v. Lindner*, 227 Ariz. 69, 70, ¶ 3 n.1 (App. 2010).

### IV. Admission of Late-Disclosed Witness Testimony

¶22 In her complaint, Berkman alleged that when she was fired, Defendants knew she was out of the office for "a scheduled vacation, a funeral, and the medical needs of her son," but did not relate this fact to her request for "emotional distress" damages. When asked about her theory of damages during her deposition, Berkman never mentioned the funeral or grief-related damages. For the first time in her final disclosure statement, filed after the witness disclosure deadline, Berkman alleged that she was entitled to damages for "Defendants' malicious and deliberate misconduct at a time when [she] was grieving the loss of her friend."

¶23 To rebut this allegation of damages, Defendants requested to call a witness who would testify that Berkman had made false statements about the extent of her relationship with the individual whose funeral she attended. The superior court found Defendants had shown good cause for their untimely disclosure of this witness and permitted them to call her at trial.

¶24 Berkman argues the superior court erred by allowing Defendants to call this witness because they did not timely disclose their intention to call her. Berkman waived this issue by failing to cite any authority or facts supporting her position and failing to develop her argument. *See MacMillan v. Schwartz*, 226 Ariz. 584, 591, ¶ 33 (App. 2011) ("Merely mentioning an argument in an appellate opening brief is insufficient. Opening briefs must present significant arguments, supported by authority, setting forth the appellant's position on the issues raised." (internal citation omitted)).

¶25 Waiver aside, Berkman has shown no abuse of discretion. Generally, a party who fails to timely disclose a witness may not call that witness at trial. *See* Ariz. R. Civ. P. 37(c)(1). But the court may allow a party to call a late-disclosed witness if it finds that the delay did not prejudice the opposing party or otherwise finds good cause. *Id.* Before the disclosure deadline, Defendants were aware of Berkman's factual allegation that she attended a funeral around the time she was fired, but she did not disclose her grief damages theory until after the witness disclosure deadline. The superior court did not abuse its discretion in finding that because Defendants were not on notice of this theory of damages until after the witness disclosure deadline, they had established good cause for their late disclosure of a witness who could rebut this theory.

## V.     Admission of Exhibit 23

¶26        Berkman contends the superior court erred in admitting Exhibit 23, a copy of an obituary and news article containing Berkman's handwritten notes. She argues the exhibit should not have been admitted because it was never produced during discovery and protected by attorney-client privilege.

¶27        Berkman has shown no error. First, contrary to Berkman's assertion, Exhibit 23 was produced in discovery. Second, Exhibit 23 was not protected by attorney-client privilege. As noted above, to establish that a communication is privileged, the party claiming the privilege must show, among other requirements, that "the communication was treated as confidential." *Clements*, 249 Ariz. at 440, ¶ 8 (citation omitted). Berkman did not treat Exhibit 23 as confidential. It was produced as part of discovery, and nothing in the record shows that Berkman asserted it was privileged and inadvertently produced. *See* Ariz. R. Civ. P. 26(b)(6)(B) (outlining procedures for clawing back inadvertently produced privileged material). And even assuming Exhibit 23 was privileged, Berkman waived any privilege by not taking reasonable steps to remedy its disclosure. *See* Ariz. R. Evid. 502(b).

## VI.    Attorneys' Fees and Costs

¶28        Defendants request their attorneys' fees incurred on appeal because Berkman's opening brief did not contain appropriate citations to the record and legal authorities, *see* ARCAP 13(a)(4)–(5), (7), and she unreasonably expanded and delayed the litigation with her appeal, *see* A.R.S. § 12-349(A)(3). Though Berkman's brief did not include appropriate citations for every assertion, she generally complied with the applicable rules. And her appeal did not unreasonably expand or delay this litigation. We thus deny Defendants' request for attorneys' fees. As the prevailing parties, Defendants may recover their taxable costs upon compliance with Rule 21, ARCAP.

**CONCLUSION**

¶29        We affirm.

